UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Realtrust IRA Alternatives, LLC, f/k/a Entrust Northwest, LLC,<br><br>     Plaintiff,<br><br>     -v.-<br><br>The Entrust Group, International Bank & Trust, and Mechanics Bank,<br><br>     Defendants. | Civil Action No.  10-382 -LM<br><br><u>Defendant The Entrust Group's Memorandum of Points and Authorities in Support of its Motion to Dismiss Pursuant to :</u><br><u>(1) Fed. R. Civ. Proc. 12(b)(2);</u><br><u>(2) Fed. R. Civ. Proc. 12(b)(3);</u><br><u>(3) Fed. R. Civ. Proc. 12(b)(6);</u><br><br><u>and</u><br><u>Motion to Compel Arbitration (9 USC § 2, *et seq.*)</u> |

**I.**    **INTRODUCTION AND SUMMARY OF ISSUES**

Plaintiff RealTrust Alternatives, LLC, f/k/a Entrust Northwest, LLC ("NORTHWEST") has filed this Complaint in the District of New Hampshire as a purely retaliatory measure intended (1) to increase the expense of litigating its on-going dispute with Defendant The Entrust Group ("TEG"), which dispute has been pending in AAA arbitration since July of this year, and (2) to force the dispute into a jurisdiction where NORTHWEST's counsel is licensed and is, apparently, more comfortable, but where neither NORTHWEST, TEG, nor Defendant Mechanics Bank are domiciled or do business.

The allegations set forth in NORTHWEST's Complaint are identical (essentially, a copy and paste job) to the claims NORTHWEST set forth in its July 29, 2010 purported "notice of termination" of the 2003 Contract for Services between NORTHWEST and TEG (the "Contract for Services"), which termination dispute already is being arbitrated pursuant to the arbitration clause in the Contract for Services.  Indeed, each of the claims brought by NORTHWEST in this duplicative complaint are entirely arbitrable as counterclaims in the AAA action.

TEG is a Delaware corporation with its principal places of business in Reno, Nevada, and in Oakland, California.  TEG does not have any clients in New Hampshire.  TEG has no offices in New Hampshire, no employees in New Hampshire, no contracts or assets in New Hampshire,

and does not engage in any marketing activities directed toward New Hampshire. NORTHWEST is a Washington LLC with no New Hampshire clients, no New Hampshire offices or employees, and no assets in New Hampshire.

In 2003, NORTHWEST and TEG entered into the Contract for Services under which TEG licensed to NORTHWEST certain proprietary assets and intellectual property to operate as an administrator and record-keeper for self-directed IRAs, in accordance with TEG's policies and rules. In June of 2010, TEG discovered that NORTHWEST had breached the Contract for Services by unilaterally directing clients to an unapproved custodial bank, and that it had surreptitiously developed and launched a business to compete against TEG utilizing TEG's proprietary assets and confidential information. Accordingly, TEG served NORTHWEST with a Formal Notice of Breach, and ultimately with a Notice of Termination.

Pursuant to a mandatory arbitration clause in the Contract for Services, TEG filed a Complaint with the AAA in Oakland, California, seeking damages for NORTHWEST's breaches and misappropriation of trade secrets. NORTHWEST filed an Answer and Response in that Arbitration and shortly thereafter filed this retaliatory lawsuit, dragging bystanders IBT and Mechanics Bank needlessly into the action in the hopes of generating enough "smoke" to obscure what is plainly forum-shopping.

NORTHWEST's artifice should not be rewarded, and NORTHWEST's Complaint against TEG in this forum should not be permitted to proceed in any event, because (1) this Court does not have personal jurisdiction over TEG, (2) NORTHWEST contracted to resolve its disputes with TEG in binding arbitration in California pursuant to California law, and (3) NORTHWEST has failed to state a claim upon which relief can be granted.

## II.    SUMMARY OF FACTS

### A.    The Self-Directed IRA Industry

Since 1974, the Internal Revenue Service (IRS) has permitted individuals to make certain IRA investments in non-traditional assets such as in real estate, private placements, limited liability companies and notes ("self-directed" investments). *See*, Declaration of Gary Kowalski

in Support of Defendant TEG's Motion to Dismiss and Motion to Compel Arbitration, filed concurrently herewith ("Kowalski Decl."), ¶7. Defendant TEG, through its national network of franchisees and licensees (which included plaintiff NORTHWEST from 2003 to 2010), has been serving self-directed IRA investors by performing account record-keeping and administration services for self-directed clients for the past 30 years. Kowalski Decl., ¶8. Over time, TEG has developed a set of proprietary assets and a proprietary system for servicing and administering self-directed accounts. Kowalski Decl., ¶9. TEG licenses its proprietary assets and procedures to "branch offices" around the United States, including to plaintiff NORTHWEST from 2003 to 2010. *Id.* The record-keeping and administrative services that companies like TEG and NORTHWEST provide for self-directed IRAs include collecting income, paying expenses and reporting the necessary information to the relevant tax authorities on various IRA assets. *Id.*

Congress has prescribed the requirements for administering self-directed IRAs, including that each IRA must have a custodian that is a "bank" as further defined by statute. Internal Revenue Code, § 408(a)(2).[1] Kowalski Decl., ¶10. Thus, companies like TEG and NORTHWEST must always partner with banks to act as custodian for their clients' IRAs. Defendants IBT and Mechanics Bank both served as the custodial banks for TEG and NORTHWEST's clients for a brief period between 2008 and 2009 (IBT) and 2009 and 2010 (Mechanics). *Id.*

B. **The Parties**

Plaintiff NORTHWEST is a Washington limited liability company with its principal place of business in Chelan, Washington. (Complaint ¶ 1.) Plaintiff recently rebranded itself as RealTrust IRA Alternatives, LLC. *Id.*; Kowalski Decl., ¶6. From 2003 to June 16, 2010, NORTHWEST had no offices, employees, or clients in New Hampshire. Kowalski Decl., ¶6. On information and belief, to this day NORTHWEST still has no offices, employees, or clients in New Hampshire. Kowalski Decl., ¶6.

---

[1] Under Section 408, qualified non-bank trustees (including a non-depository trust company like IBT) may serve as custodians for self-directed IRAs.

Defendant TEG is a Delaware corporation with principal places of business in Oakland, California and Reno, Nevada. (Complaint ¶ 2); Kowalski Decl., ¶3. TEG has no offices, employees, clients or business in New Hampshire. Kowalski Decl., ¶5. It does not market or solicit business in New Hampshire. Kowalski Decl., ¶5.

Defendant Mechanics Bank is a California corporation with its principal place of business in Northern California. (Complaint ¶ 7).

Defendant IBT was formed and licensed by the New Hampshire Banking Department as a New Hampshire non-depository trust company. *See*, Declaration of Russ Anderson filed in Support of Defendant International Bank & Trust's Motion to Dismiss, or, in the Alternative, to Compel Arbitration ("Anderson Decl."), ¶5. Although IBT was chartered in New Hampshire and did maintain an office there (with a single employee), IBT did not market or direct any of its business activities inside of New Hampshire. Anderson Decl.,¶ 14. IBT is no longer an active corporation, having voluntarily dissolved its business and returned its banking charter to the New Hampshire Banking Department on September 16, 2009. Anderson Decl.,¶ 16. While it was an active corporation, IBT was a 100% wholly owned subsidiary of International Bancorp Holding Corporation (IBHC), a company whose majority owners reside in the Bay Area in Northern California, and whose principal place of business is in Oakland, California. Anderson Decl., ¶ 6.

### C. The NORTHWEST and TEG Contract for Services

TEG operates the largest network of self-directed retirement account administrative and record-keeping companies in the United States. Kowalski Decl., ¶8. TEG has established a national network of franchisees and licensees to serve self-directed investors by performing account record-keeping and administration services for self-directed clients for the past 30 years. NORTHWEST is one such licensee. *Id.* Over time, TEG has developed a set of proprietary assets and a proprietary system for servicing and administering self-directed accounts. Kowalski Decl., ¶9.

Under the September 30, 2003 Contract for Services, TEG licensed to NORTHWEST a proprietary system and set of proprietary assets which allowed NORTHWEST to accurately

-4-

record and transact its clients' investments in an organized and compliant manner.  Kowalski Decl., ¶¶ 11-12; Contract for Services (Cmplt, Ex. 1).  TEG also licensed to NORTHWEST the use of its intellectual property, including the limited use of its trademarks and numerous copyrighted documents and programs.  *See*, *Id.*.  Finally, TEG provided NORTHWEST access to custodial banks and custodial services.  *See*, *Id*.

Under the Contract for Services NORTHWEST agreed they would, among things (1) act as recordkeeper and administrator for clients' IRAs, (2) refrain from promoting, brokering, or marketing investments or acting in an unauthorized manner (such as in the capacity of a legal advisor), (3) regularly report all IRA contributions or buy/sell directions by clients to TEG and to the authorized Custodial Bank, (4) maintain proper, accurate, and truthful documentation and records for all client IRAs, (5) safeguard TEG's intellectual property (including its trademarks and "Confidential Information" as defined in the Agreement), (6) refrain from appointing or utilizing any custodial bank without TEG's consent and approval of the form of such a relationship, (7) seek TEG's approval for any websites they operated, (8) refer marketing prospects for IRA-related real estate transactions and (9) acknowledge TEG's role in maintaining a cash administration program.[2]  Kowalski Decl., ¶12.

### D. The Dispute Between TEG And NORTHWEST

In or around June 17, 2010, TEG discovered that NORTHWEST had breached the Contract for Services by (1) utilizing TEG's trademark and confidential information for services without consent and outside the scope permitted under the Contract for Services; (2) intentionally interfering with TEG's business relationships and contracts with third parties, such as by mailing letters to IRA clients stating that Washington Federal Bank was their new custodial bank (when in fact NORTHWEST had no authority to appoint such a custodian); (3) failing to

---

[2] The IRS Code requires that each self-directed IRA must have a custodian that is a "bank" as defined by statute.  Internal Revenue Code, § 408(a)(2).  Accordingly, in addition to the Contract for Services with TEG, NORTHWEST also entered into an Agreement for Custodial Services (the "Custodial Agreement") with Defendant International Bank & Trust ("IBT") (Cmplt., Ex. 2), and subsequently, a Contract for Custodial Services with Mechanics Bank after IBT voluntarily dissolved and could no longer serve as a custodial bank.  Cmplt., Ex. 3.

refer marketing prospects for IRA-related real estate transactions at any point during the life of the Contract for Services; (4) purporting to designate a new custodial bank for client IRAs without claimant's approval for consent; (5) creating and publishing a website advertising legal and investment services that linked to and improperly associated those services with NORTHWEST's self-directed IRA administration business, and (6) secretly entering into a contract with an alternate custodial bank under which TEG would have been cut off from its contractually-designated role in the cash administration program.  Kowalski Decl., ¶13.

Accordingly, on June 22, 2010 TEG served NORTHWEST with a Formal Notice of Breach of the Contract for Services.  TEG began investigating NORTHWEST's conduct and discovered further breaches, including that NORTHWEST was operating a website selling legal services and investment advice (strictly prohibited under the Contract for Services), and that NORTHWEST had attempt to compel a third party (Mechanics Bank) to wire funds to it from an account on which TEG was the only account holder.  On June 29, 2010 TEG served NORTHWEST with a second Formal Notice of Breach of the Contract for Services.  Kowalski Decl., ¶¶ 14-17.

Notwithstanding TEG's demands, NORTHWEST refused to cease its breaching conduct or to discontinue its misappropriation of TEG's proprietary information and assets.  Thus, in July of 2010, TEG filed a Complaint with the American Arbitration Association. Finally, on August 3, 2003, TEG served NORTHWEST with formal Notice of Termination of the Contract for Services. Kowalski Decl., ¶¶ 14-17.  On August 16, 2010, NORTHWEST appeared in the AAA Arbitration (subjecting itself to jurisdiction) by filing a substantive response and shortly thereafter engaging in a scheduling conference.  Declaration of John P. Kern in Support of Defendant The Entrust Group's Motion to Dismiss and Motion to Compel Arbitration ("Kern Decl."),¶4-7, and Exhibits A through D.

      E.     **<u>NORTHWEST Agreed to Arbitrate its Disputes With TEG in California</u>**

Under the Contract for Services, NORTHWEST agreed that:

>  (i) Any controversy or claim arising out of this Agreement, or any breach of this Agreement, including any controversy or claim as to arbitrability or rescission, shall be settled by binding arbitration in accordance with the Commercial Rules (the "Rules") of the American Arbitration Association then in effect. The arbitration shall be before one neutral arbitrator selected in accordance with the Rules and shall proceed under the Expedited Procedures of the Rules, irrespective of the amount in dispute.
>
>  (ii) Such arbitration shall be conducted in Oakland, California.
>
>  (iv) Either party may, without inconsistency with this Agreement, seek from a court any interim or provisional relief that is necessary to protect the rights or property of that party, pending the arbitrator's determination of the merits of the parties' dispute. . . .
>
>  (vii) The parties acknowledge and agree that, by agreeing to binding arbitration, they are waiving their rights to trial of a dispute in a court of law and to a trial before a jury.

Cmplt, Ex. 1, pp. 14-15, ¶15(b) (emphasis added). Pursuant to this arbitration agreement, when TEG discovered that NORTHWEST had breached the Contract for Services and had been misappropriating its trade secrets and infringing its trademarks, TEG filed a demand in arbitration against NORTHWEST. Kowalski Decl., ¶16, Ex. D. NORTHWEST subsequently appeared in the arbitration.

TEG, through counsel, alerted NORTHWEST to the arbitration clause on numerous occasions, most recently by email on November 23, 2010, in which TEG notified NORTHWEST of its intent to move to compel arbitration in this action. Kern Declaration, Ex.C. NORTHWEST has refused to submit to mandatory arbitration, and instead filed this retaliatory lawsuit.

Moreover, under the Contract for Services, NORTHWEST and TEG agreed that the "Agreement shall be governed by, and construed and enforced in accordance with the internal laws of the State of California." *Id.*, p. 15,¶15(d). Similarly, under the Mechanics Bank Contract for Custodial Services (Exhibit 3 to NORTHWEST's Complaint; hereinafter, the "Mechanics Bank Contract"), NORTHWEST, TEG, and Mechanics Bank also agreed that the "Agreement will be governed by and construed in accordance with California law, without regard for its conflict of law provisions." Cmplt., Ex. 3.

### F. TEG Has No Contacts With The State Of New Hampshire

TEG is a Delaware corporation with its principle place of business in Oakland, California and Reno, Nevada. Cmplt, ¶ 2; Kowalski Decl., ¶3. Defendant, Mechanics Bank is a California corporation with a principal place of business in Northern California. Cmplt,¶7. Although TEG did business with a New Hampshire bank (Defendant IBT) between 2008 and 2009, it does not currently transact any business in New Hampshire. Kowalski Decl., ¶5. IBT is not and was not ever a wholly-owned subsidiary of TEG. Anderson Decl., ¶ 6. TEG is not a party to contracts entered into in New Hampshire. Kowalski Decl., ¶5. TEG does not direct marketing toward New Hampshire and has never directed any marketing efforts toward New Hampshire residents. It has never participated in a marketing event (such as a conference or seminar) in New Hampshire. Kowalski Decl., ¶5. None of TEG's corporate officers are located in New Hampshire. Kowalski Decl., ¶5. TEG has never had any employees in New Hampshire. Kowalski Decl., ¶5. TEG does not maintain any bank accounts or other property in New Hampshire. *Id.* TEG does not have any client accounts in New Hampshire. Kowalski Decl., ¶8. Finally, during the more than six-year duration of the Contract for Services, NORTHWEST did not have any New Hampshire clients. Anderson Decl., ¶ 15. NORTHWEST is a Washington LLC with an address in Chelan, Washington. Cmplt., ¶1.

TEG is not a party to the Custodial Agreement discussed in paragraphs 25-32 of NORTHWEST's Complaint, and, as set forth in detail in IBT's Motion to Dismiss, or in the Alternative, to Compel Arbitration, NORTHWEST has failed to state a claim against the only New Hampshire party to this litigation. *See*, Cmplt, Ex. 2. Further, none of the factual allegations set forth in paragraphs 12-24 or 33-61 of NORTHWEST's Complaint (those involving TEG's alleged conduct) involve any actions taken in the State of New Hampshire.

### III. ARGUMENT

#### A. This Court Lacks Personal Jurisdiction Over TEG and the Complaint Should Be Dismissed Pursuant to Fed. R. Civ. Proc. 12(b)(2)

NORTHWEST's Complaint against TEG must be dismissed because this Court lacks personal jurisdiction over TEG. "New Hampshire's long-arm statute reaches to the full extent

that the Constitution allows." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 287 (1st Cir. 1999). Accordingly, in order to establish that this Court has specific personal jurisdiction,[3] it is NORTHWEST's burden to establish:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st. Cir. 1995) (internal citations omitted). Each of the three factors – relatedness, purposeful availment, and reasonableness – must be met in order for the Court to exercise personal jurisdiction over TEG. *Id.* The Court may consider declarations in ruling on a Motion to Dismiss for lack of personal jurisdiction, and the NORTHWEST may not rely on its conclusory allegations regarding jurisdiction to defeat TEG's Motion to Dismiss. *Negron-Torres v. Verizon Communs., Inc.*, 478 F.3d 19, 25 (1st Cir. 2007).

NORTHWEST alleges that this Court has jurisdiction over TEG by virtue of TEG (1) allegedly transacting business in New Hampshire, (2) allegedly contracting to provide services in New Hampshire, and/or (3) allegedly committing tortious acts in New Hampshire and/or other actions which confer jurisdiction pursuant to the New Hampshire Long Arm Statute." Cmplt., ¶ 10. However, these conclusory allegations, and the facts alleged in the Complaint, do not give rise to jurisdiction because there is no evidence that TEG purposefully directed its activities toward residents of New Hampshire, that NORTHWEST's causes of action arise out of or result

---

[3] NORTHWEST does not appear to have alleged that this Court has general personal jurisdiction over TEG, nor does TEG have the type of continuous and systematic contacts with New Hampshire that would justify subjecting it to general personal jurisdiction in New Hampshire. Cmplt., ¶ 10. *See*, *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) ("There is no claim here of general jurisdiction. . . . [Plaintiff] bases his claim of specific personal jurisdiction over [Defendant] on the Massachusetts long-arm statute.")

from TEG's New Hampshire-related activities, and that the exercise of personal jurisdiction over TEG would be reasonable.

        1.      *This litigation does not arise out of TEG's New Hampshire activities*

To invoke specific personal jurisdiction, an "action must directly arise out of the specific contacts between the defendant and the forum state." *Phillips Exeter Academy*, 196 F.3d at 290 (internal quotations omitted) (rejecting argument that the defendant was subject to jurisdiction of the New Hampshire courts merely because the *consequences* of the relationship between the parties involved contacts with New Hampshire).

> "The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court steadfastly rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect. Instead, the defendant's in-state conduct must form an important, or [at least] material, element of proof' in the plaintiff's case."

*Harlow v. Children's Hosp.*, 432 F.3d 50, 60-61 (1st Cir. 2005) (internal quotations and citations omitted). "In contract cases, a court [. . .] must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach. Because the elements differ in a tort case, a court [. . . ] must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Phillips Exeter Academy*, 196 F.3d at 289 (internal citations omitted).

NORTHWEST has attempted to plead the following causes of action against TEG:

- Breach of contract and breach of the implied covenant of good faith and fair dealing (with regard to the Mechanics Bank Contract and the Contract for Services). Each of these contracts was entered into by California/Nevada and Washington companies and was to be performed in California/Nevada and Washington with respect to the accounts of NORTHWEST's non-New Hampshire clients). Cmplt., ¶¶ 70 and 85; Exs. 1 and 3. Neither of these contracts were negotiated nor were they (allegedly) breached in New Hampshire. *See*, *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) ("[W]here the cause of action is for an alleged breach of contract, we ask

whether the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach.")

- Declaratory judgment with regard to contracts (the Mechanics Bank Contract and the Contract for Services) between California/Nevada and Washington companies that were to be performed in California/Nevada and Washington. Cmplt., ¶¶ 63-68; Exs. 1 and 3. NORTHWEST further alleges that the Mechanics Bank Contract "contains the operative provisions relative to any and all current custodial relationships involving TEG, NORTHWEST, and Mechanics." Cmplt., ¶ 35. As with NORTHWEST's contract claims, TEG's New Hampshire activities are not related to NORTHWEST's claims for declaratory relief and do not support the exercise of personal jurisdiction by this Court. *See*, *Adelson*, 510 F.3d at 49-50.
- Quantum Meruit/Unjust Enrichment on the basis of TEG's (a company with its principal place of business in California and Nevada) imposition of certain fees on NORTHWEST (a company doing business in Washington). Cmplt., ¶¶ 72-75.
- Misappropriation of Trade Secrets based on TEG's alleged email and mail contact with NORTHWEST's non-New Hampshire clients purportedly directed from TEG's California/Nevada offices to NORTHWEST's clients in Washington. *See*, Cmplt., ¶ 80; Ex. 1, p. 2, ¶1(b)(1); Kowalski Decl., ¶¶ 3-6.
- Violation of the New Hampshire Consumer Protection Act (a cause of action that has within the exclusive jurisdiction of the New Hampshire Banking Commissioner, as discussed *infra*, section III(C)) based on "TEG and Mechanics' custodial bank services." Cmplt. ¶88.

As demonstrated above, none of TEG's New Hampshire activities form an important or material element of proof in NORTHWEST's case, therefore, the exercise of personal jurisdiction over TEG by the District Court case would be improper. *See*, *Harlow v. Children's Hosp.*, 432 F.3d 50, 60-61 (1st Cir. 2005)

2. *TEG has not personally availed itself of the privilege of conducting activity in New Hampshire*

The purposeful availment test requires NORTHWEST to prove that TEG's contacts with New Hampshire "represent a purposeful availment of the privilege of conducting activities in [New Hampshire], thereby invoking the benefits and protections of [its] laws and making the defendants' involuntary presence before the state's courts foreseeable." *Phillips Exeter Academy*, 196 F.3d at 292 (internal quotations omitted). Although TEG did business with a New Hampshire bank (Defendant IBT) between 2008 and 2009, it does not currently transact any business in New Hampshire. IBT is not and has never been a wholly-owned subsidiary of TEG. Anderson Decl., ¶ 6. TEG is not a party to contracts formed in New Hampshire. Kowalski Decl., ¶5. TEG does not direct marketing toward New Hampshire and has never directed any marketing efforts toward New Hampshire residents. *Id.* It has never participated in a marketing event (such as a conference or seminar) in New Hampshire. *Id.* None of TEG's corporate officers are located in New Hampshire. *Id.* TEG has never had any employees in New Hampshire. *Id.* TEG does not maintain any bank accounts or other property in New Hampshire. *Id.* TEG does not have any client accounts in New Hampshire. Kowalski Decl., ¶ 5. Finally, during the more than six-year duration of the Contract for Services, NORTHWEST did not have any New Hampshire clients. Anderson Decl.,¶ 25; Kowalski Decl., ¶ 6. Accordingly, TEG has not availed itself of the privilege of conducting activities in New Hampshire, and it simply is not foreseeable that TEG would be subject to suit in New Hampshire.

3. The exercise of jurisdiction over TEG would not be reasonable

Finally, the exercise of personal jurisdiction over TEG in New Hampshire must be reasonable. In considering whether the exercise of personal jurisdiction over an out-of-state defendant would be reasonable – that is, whether it would offend traditional notions of fair play and substantial justice [*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)] - the Court must balance the so-called "gestalt" factors: (1) the burden on TEG of defending itself in New Hampshire; (2) New Hampshire's interest in adjudicating this dispute; (3) NORTHWEST's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining

the most effective resolution of the controversy; and, (5) the common interest of all sovereigns in promoting substantive social policies. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994). Moreover, a "distant court cannot constitutionally exercise in personam jurisdiction over a non-resident defendant at the behest of a plaintiff who can muster only the most tenuous showings of relatedness and purposefulness if, as in this case, forcing the defendant to defend in the forum would be plainly unreasonable." *Ticketmaster-New York*, 26 F.3d at 212. In this litigation, the first gestalt factor militates strongly against the exercise of jurisdiction in New Hampshire, and the other factors either are neutral or also weigh against finding that TEG is subject to personal jurisdiction in New Hampshire.

      The burden of forcing TEG to defend itself in New Hampshire would be great. *Ticketmaster-New York*, 26 F.3d at 210 (recognizing the burden of forcing California residents to defend themselves in the First Circuit). TEG's principal place of business is in Oakland California and Reno, Nevada. Kowalski Decl., ¶ 3. Already, TEG has been forced to engage local counsel to assist its California attorneys (who have long been representing TEG in the parallel AAA arbitration with NORTHWEST) in defending against this litigation. TEG's appearance at hearings in this litigation would require lengthy and expensive travel. Moreover, the dispute between NORTHWEST and TEG is already being adjudicated in the AAA arbitration in California. Kowalski Decl., ¶¶ 13-17; Kern Decl., ¶¶ 4-7 and Exs. A-D. Indeed, New Hampshire's interest in exercising jurisdiction is "much diminished" because NORTHWEST filed this lawsuit suit "primarily to retaliate" against TEG for its role in a separate litigation. *Ticketmaster-New York*, 26 F.3d at 211. *See also*, *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 30 (1st Cir. 2008) (while courts normally give deference to the plaintiff's choice of forum, where the plaintiff is not a resident of the forum state, "it is hard to see why it would be less burdensome for him to appear in Illinois than in Massachusetts, save that he has retained a Massachusetts lawyer. In addition, efficient administration of justice can easily be accomplished in Illinois, where the plaintiff has already asserted his claims as counterclaims"). Here too, efficient administration of justice can easily be accomplished in Northern California,

NORTHWEST is located in nearby Washington state (not in New Hampshire), and it would not be reasonable to force TEG to defend itself against a claim subject to mandatory arbitration in California in the District Court in New Hampshire.

> **B. This Action is Not Properly Venued in New Hampshire and the Court Should Dismiss NORTHWEST's Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(3).**

Pursuant to 28 U.S.C. 1391(a), this litigation could only be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated,"[4] Because the events giving rise to NORTHWEST's claims did not occur in New Hampshire and the property that is the subject of this action is not located in New Hampshire, venue is improper in this judicial district.

In determining whether venue is proper in New Hampshire, the Court must look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim. *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001). Here none of the acts or omissions alleged in NORTHWEST's claims against TEG took place in New Hampshire, and none of NORTHWEST's client accounts are in New Hampshire. Accordingly, a "substantial part of the events or omissions giving rise" to NORTHWEST's claims did not occur

---

[4] 28 U.S.C. 1391 also provides that an action may be venued in a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, but only if there is no district in which the action may otherwise be brought. That is not the case in this litigation. IBT has dissolved and is no longer active as a corporation. But IBT was and is a wholly owned subsidiary of International Bancorp Holding, Inc., whose CEO and majority owner (Hugh Bromma) resides and works in the Northern, California. Under the terms of the dissolution agreement, IBHI has assumed all of IBT's liabilities.

-14-

in New Hampshire, and NORTHWEST's Complaint should be dismissed for improper venue. *Id.*[5]

  C. **Motion to Dismiss Pursuant to 12(b)(6)**

    1. *Iqbal* Requires That a Complaint Be Facially Plausible in Order to Survive a Motion to Dismiss.

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Ibid*.

In *Ashcroft v. Iqbal*, the Supreme Court confirmed the *Twombly* pleading standard, holding:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard [. . .] asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotations omitted); *see also*, *Iqbal.*, 129 S. Ct. at 1953 (affirming that *Twombly* governs the pleading standards in all civil actions).

---

[5] Should the Court not dismiss this lawsuit outright, TEG reserves its right to file a counterclaim and motion to transfer this case to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1406(a), and for the convenience of the parties and witnesses and in the interests of justice pursuant to 28 U.S. C. 1404(a). Both TEG and Mechanics are located in Northern California, NORTHWEST has agreed that its claims would be decided under California law in binding arbitration in California, and most of the witnesses in this litigation are located in California—none of them are located in New Hampshire. A party resisting transfer to a forum designated in a contract must demonstrate exceptional facts indicating that a transfer would be inappropriate. *Stonehenge, Ltd. v. Garcia*, 989 F. Supp. 539, 540 (SD NY 1998).

The Court in *Iqbal* adopted a two-prong test for analyzing motions to dismiss: <u>First</u>, the court must separate legal conclusions that are not entitled to an assumption of truth (even when couched as factual allegations) from factual allegations.[6] <u>Second</u>, while assuming the veracity of the factual allegations, the court must decide whether a complaint states a plausible claim for a relief. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief.'" *Id.*, 129 S. Ct. at 1950, citing FRCP 8(a)(2). It is axiomatic that conduct that is merely consistent with unlawful actions does not plausibly suggest that the unlawful action has occurred. *Ibid.*; *Twombly*, 550 U.S. at 567-570. Under these standards, NORTHWEST's claims against TEG fail to state a claim and should be dismissed.

        2.    <u>NORTHWEST's Claims Against TEG Lack Facial Plausibility and Should Be Dismissed</u>

            a.    NORTHWEST Fails to State a Claim for Quantum Meruit/Unjust Enrichment Against TEG.

NORTHWEST attempts to plead a cause of action for unjust enrichment and quantum meruit against TEG. *See*, Cmplt., ¶¶ 72-75. In New Hampshire, however, "unjust enrichment generally does not form an independent basis for a cause of action." *General Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 612 (2010). Furthermore, NORTHWEST has failed to state a claim for quantum meruit in that it has not alleged the requisite facts that (1) NORTHWEST rendered services to TEG; (2) with the knowledge and consent of the TEG; and (3) under circumstances that make it reasonable for the NORTHWEST to expect payment from TEG. *Ibid*. Accordingly, NORTHWEST's allegations that it expected to further benefit from TEG pursuant to the Contract for Services and that TEG imposed a fee on NORTHWEST do not state a claim upon which relief can be granted.

---

[6] Unsupported conclusions are not entitled to an assumption of truth. Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions". *Iqbal.*, 129 S. Ct. at 1949-1950.

                b.        NORTHWEST Fails to State a Claim Under RSA 358-A:2 as a Matter of Law

NORTHWEST's sixth cause of action for violation of RSA 358-A:2 also fails as a matter of law because the New Hampshire Consumer Protection Act specifically exempts trade or commerce that is subject to the jurisdiction of the bank commissioner from its scope. *See*, N.H.R.S.A. 358-A:3 Exempt Transactions ("The following transactions shall be exempt from the provisions of this chapter: (I.) Trade or commerce that is subject to the jurisdiction of the bank commissioner").

The State of New Hampshire vests exclusive jurisdiction over Consumer Protection claims regarding banking practices in the New Hampshire Bank Commissioner, not in the courts.

> The commissioner shall have exclusive authority and jurisdiction to investigate conduct that is or may be an unfair or deceptive act or practice under RSA 358-A and exempt under RSA 358-A:3, I or that may violate any of the provisions of Titles XXXV and XXXVI and administrative rules adopted thereunder.

N.H.R.S.A. 383:10-d. *See*, Cmplt., ¶ 87, alleging that TEG is engaged in trade or commerce "in the form of banking practices."

Thus, the plain and unambiguous language of N.H.R.S.A. 383:10-d vests exclusive authority and jurisdiction over NORTHWEST's claim in the banking commissioner, not the courts. *See*, *Town of Rye Bd. of Selectmen v. Town of Rye Zoning Bd. of Adjustment*, 155 N.H. 622, 624 (2007) ("When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute."). Thus, NORTHWEST's sixth cause of action must also be dismissed.

**D.**    **NORTHWEST's Claims Should Be Dismissed With Prejudice Because NORTHWEST is Bound to Arbitrate its Disputes Against TEG.**

Under the Contract for Services, NORTHWEST agreed that "[a]ny controversy or claim arising out of this Agreement, or any breach of this Agreement, including any controversy or claim as to arbitrability or rescission, shall be settled by binding arbitration." Cmplt., Ex. 1, p. 14. Indeed, an arbitration encompassing NORTHWEST's dispute with TEG is already pending

before the AAA, and has been pending since July of 2010, long before NORTHWEST filed its Complaint in this action. Kern Decl., ¶¶ 4-8.

NORTHWEST admits that it is a party to the Contract for Services (Cmplt., ¶ 20; Ex. 1), and the Court may examine the contents of documents attached to NORTHWEST's Complaint on a Motion to Dismiss. *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003) (documents attached to complaint and incorporated therein by reference are treated as part of the complaint for purposes of a Rule 12(b)(6) motion). Here, the Contract for Services unambiguously provides that NORTHWEST's claims against TEG (if any) must be arbitrated, because they arise out of the Contract for Services and the alleged breach thereof. Cmplt., Ex. 1, p. 14.

There is a strong statutory presumption in favor of enforcing arbitration clauses like the clause in the Contract for Services. "Congress enacted the Federal Arbitration Act ("FAA"), codified as amended at 9 U.S.C. §1, et seq., in order to 'overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Braintree Labs., Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 2010 U.S. App. LEXIS 20993, *15 (1st Cir. 2010) (citing *Vaden v. Discovery Bank*, 129 S.Ct. 1262, 1271 (2009)). Moreover, the District Court may <u>dismiss</u> plaintiff's complaint in its order compelling arbitration. *Braintree Labs*, 622 F.3d 36. *See also*, *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable"); *Bercovitch v. Baldwin Sch.*, 133 F.3d 141, 156 (1st Cir. 1998) ("a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable."). NORTHWEST's entire relationship with TEG arose out of the Contract for Services and each of its disputes with TEG arise out of that contractual relationship. (Cmplt., Ex. 1). Accordingly, its claims are all arbitrable.[7] Accordingly, the Court

---

[7] Although there is one exception from the arbitration clause for claims for "interim or provisional relief that is necessary to protect the rights or property" of a party "pending the

should dismiss NORTHWEST's complaint against IBT in its entirety. *Next Step Med. Co.*, 619 F.3d at 71.

In the alternative, the Court should stay this litigation pending arbitration of NORTHWEST's claims. *See*, 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court [. . .] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.") *See also*, 9 U.S.C. §4 (party aggrieved by failure to arbitrate under a written agreement for arbitration may petition District Court for an order directing that arbitration proceed pursuant to the agreement to arbitrate).

## IV.  CONCLUSION

For all the foregoing reasons, TEG respectfully requests that the Court dismiss NORTHWEST's claims against it with prejudice, or, in the alternative, that this litigation be stayed pending arbitration of NORTHWEST's claims.

---

arbitrator's determination of the merits of the parties' dispute", [Cmplt., Ex. 1, p. 14, ¶15(b)(iv)] NORTHWEST has not sought any "interim or provisional relief" in this litigation. Accordingly, each of its claims are arbitrable.

                Respectfully submitted,

                **THE ENTRUST GROUP**

                By Their Attorneys,

                **RATH, YOUNG AND PIGNATELLI, P.C.**

                One Capital Plaza
                Concord, NH 03302-1500
                (603) 226-2600

December 3, 2010         By: /s/ Andrew W. Serell
                            Andrew W. Serell  (NH Bar No. 2298)

Of Counsel:
John P. Kern, Bar No. CA 206001
Amanda M. Knudsen, Bar No. CA 252752
Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA  94111
(415) 291-7400

### CERTIFICATE OF SERVICE

    I, Andrew W. Serell, hereby certify that the foregoing document was filed with the Court through the ECF system on the 3rd day of December, 2010, and service will be made electronically by the Court's system to all counsel of record.

December 3, 2010         By: /s/ Andrew W. Serell
                            Andrew W. Serell