UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Realtrust IRA Alternatives, LLC, f/k/a Entrust Northwest, LLC,<br><br>          Plaintiff,<br><br>          -v.-<br><br>The Entrust Group, International Bank & Trust, and Mechanics Bank,<br><br>          Defendants. | Civil Action No. 10-382-LM<br><br><u>Defendant International Bank & Trust's Memorandum of Points and Authorities in Support of Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6), or, in the Alternative, to Compel Arbitration (9 USC § 2, *et seq.*).</u> |

## I.    <u>INTRODUCTION</u>

Plaintiff RealTrust IRA Alternatives f/k/a Entrust Northwest, LLC's ("NORTHWEST's") Complaint against International Bank & Trust ("IBT") should be dismissed, because NORTHWEST has failed to state a claim against IBT, and because any dispute between NORTHWEST and IBT is subject to a mandatory arbitration provision that governs conduct arising from their past business relationship.

NORTHWEST's naming of IBT as a defendant in this case—in this forum—makes no sense, unless it is understood as a cynical attempt by NORTHWEST's Massachusetts' counsel to force a dispute already being arbitrated in Oakland, California, into a jurisdiction where plaintiff's counsel is licensed and a venue more convenient to his practice. IBT has no office, employees, or business in the State of New Hampshire, and has been dissolved as a corporation for more than 18 months. The plaintiff NORTHWEST has no office, employees, or IRA clients in the state of New Hampshire. IBT's holding company, International Bancorp Holding Corporation (IBHC) is located in Oakland, California (the location of the pending arbitration involving NORTHWEST). IBT and NORTHWEST have had no business relationship or any contacts with each other since IBT's dissolution in 2009. The custodial contract to which NORTHWEST and IBT at one time were parties (from 2008 to 2009) contain both Notice of

Breach (and opportunity to cure) and Mandatory Arbitration provisions—which NORTHWEST plainly has ignored in filing this lawsuit.  And most tellingly, NORTHWEST has failed to allege facts sufficient to state a claim against IBT, nor has it alleged any damages attributable to IBT's conduct.

In fact, NORTHWEST filed this Complaint in the District of New Hampshire as a retaliatory lawsuit—only after Defendant The Entrust Group (TEG) sued NORTHWEST in arbitration before the American Arbitration Association (the "AAA Arbitration"), pursuant to a mandatory arbitration clause in a contract between those parties.  The business dispute at the core of this lawsuit is entirely between NORTHWEST (a Washington state company with no clients, offices, or assets in New Hampshire) and TEG (a Delaware corporation whose primary offices, staff, executives, and assets all are located in Northern California).

Despite having named IBT as a defendant in this litigation, NORTHWEST has failed to state any legal or equitable claims against IBT.  Further, as set forth in the contract NORTHWEST attaches as Exhibit 2 to its Complaint, NORTHWEST is required to arbitrate its dispute with IBT (if any such dispute exists in the first place), and it has expressly waived its rights to seek relief in a jury trial or in any court at all.  Finally, NORTHWEST will suffer no prejudice if its Complaint is dismissed, because all of the facts asserted by NORTHWEST in its complaint go to its claims against TEG, and not to its (non-existent) claims against IBT, and thus, may be asserted as counterclaims against TEG in the AAA Arbitration.[1]

Because NORTHWEST has not stated any claims upon which relief can be granted against IBT, and is required to raise any claims it may eventually plead in arbitration, the Court should dismiss its complaint with prejudice, or, in the alternative, enter an order staying this litigation and compelling NORTHWEST to arbitrate its claims against IBT.

---

[1] The California AAA Arbitration is in its early stages, and the parties are scheduled to appear at a Preliminary Scheduling Conference in the next month to discuss, among other issues, the setting of deadlines for amending the complaint, adding parties, and filing counterclaims.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

### A.    The Self-Directed IRA Industry

Since 1974, the Internal Revenue Service (IRS) has permitted individuals to make certain IRA investments in non-traditional assets such as in real estate, private placements, limited liability companies and notes ("self-directed" investments).  *See*, Declaration of Gary Kowalski, filed in support of Defendant The Entrust Group's Motion to Dismiss  ("Kowalski Decl., ¶ 7). Defendant TEG, through its national network of franchisees and licensees (which included plaintiff NORTHWEST from 2003 to 2010), has been serving self-directed IRA investors by performing account record-keeping and administration services for self-directed clients for the past 30 years.  Kowalski Decl, ¶ 8.  Over time, TEG has developed a set of proprietary assets and a proprietary system  for servicing and administering self-directed accounts.  Kowalski Decl., ¶ 9,  TEG licenses its proprietary assets and procedures to "branch offices" around the U.S., including to plaintiff NORTHWEST from 2003 to 2010. *Id.* The record-keeping and administrative services that companies like TEG and NORTHWEST provide for self-directed IRAs include collecting income, paying expenses and reporting the necessary information to the relevant tax authorities on various IRA assets.  *Id.*

Congress has prescribed the requirements for administering self-directed IRAs, including that each IRA must have a custodian that is a bank r other qualified non-bank entity as further defined by statute.  Internal Revenue Code, § 408(a)(2).  Declaration of Russ Anderson in Support of Defendant IBT's Motion to Dismiss or, in the Alternative, to Compel Arbitration ("Anderson Decl."),¶ 8.  Thus, companies like TEG and NORTHWEST must always partner with banks to act as custodian for their clients' IRAs.   Cmplt., ¶ 18.  Defendants IBT (2008-2009) and Mechanics Bank (2009-2010) both served as the custodial banks for TEG and NORTHWEST's clients for brief period.  Anderson Decl., ¶¶ 8-10.  *See also*, Cmplt., ¶¶ 25, 30, 32, 38.

B.    **The Parties**

Defendant IBT was formed and licensed by the New Hampshire Banking Department as a New Hampshire non-depository trust company.  Anderson Decl., ¶ 5.  Under its business model, IBT acted as the custodian (pursuant to IRS Code Section 408) for individuals' self-directed IRAs, including for certain of NORTHWEST's clients from 2008 to 2009.  Anderson Decl., ¶ 8-10.  Although IBT was chartered in New Hampshire and did maintain an office there (with one employee), IBT did not market or direct any of its business activities inside of New Hampshire.  Anderson Decl., ¶ 14.  IBT did enter into a custodial agreement with plaintiff NORTHWEST in 2008, but NORTHWEST is located in Washington state, and ***not one of the roughly 800 IRAs that IBT custodied for NORTHWEST were for individual's residing in New Hampshire***.  Cmplt., ¶ 3; Anderson Decl., ¶ 15.  In fact, NORTHWEST's contract with TEG prohibited him from soliciting IRA clients outside of the Pacific Northwest.  Cmplt., Ex. 1, ¶ E(1)(b).

Since its inception, IBT was a 100% wholly owned subsidiary of International Bancorp Holding Corporation (IBHC), a company whose majority owners reside in the Bay Area in Northern California, and whose principal place of business is in Oakland, California.  Anderson Decl., ¶ 6.  IBT is no longer an active corporation, having voluntarily dissolved its business and returned its banking charter to the New Hampshire Banking Department on September 16, 2009.  Anderson Decl., ¶16.

Plaintiff NORTHWEST is a Washington limited liability company with its principal place of business in Chelan, Washington.  (Complaint ¶ 1.)  Plaintiff recently rebranded itself as RealTrust IRA Alternatives, LLC.  *Id.*  From 2003 to June 16, 2010, NORTHWEST had no offices, employees, or clients in New Hampshire.  On information and belief, to this day NORTHWEST still has no offices, employees, or clients in New Hampshire.  Kowalski Decl., ¶ 6.

Defendant TEG is a Delaware corporation with principal places of business in Oakland, California and Reno, Nevada.  (Complaint ¶ 2.)  TEG has no offices, employees, clients or

business in New Hampshire.  It does not market or solicit business in New Hampshire.  Kowalski Decl., ¶¶ 3-6.

Defendant Mechanics Bank is a California corporation with its principal place of business in Richmond, California. (Complaint ¶ 7).

### C.    The NORTHWEST and TEG Contract for Services

NORTHWEST and TEG entered into a Contract of Services (the "Contract for Services") in 2003, under which TEG licensed to NORTHWEST certain assets and proprietary tools related to the administration of self-directed IRAs for individuals.  Cmplt., Ex. 1.  Pursuant to the terms of the Contract for Services (and as required by IRS Code Section 408), the parties contracted with banks and other qualified non-bank trustees to act as the legal custodians for their clients' self-directed IRAs (including, at various points, Defendants IBT and Mechanics Bank).  Cmplt., ¶ 18, 25, 32.  Exs. 1-3.  The Contract for Services further required that NORTHWEST work only with custodial banks approved by TEG, and that it use TEG's trademarks, proprietary forms, procedures, and other assets in accordance with specific rules and policies.  Cmplt., Ex. 1.

### D.    The NORTHWEST and IBT Custodial Agreement

As set out above, IBT was a New Hampshire corporation chartered and regulated as a non-depository bank and trust company by the New Hampshire Banking Department.  Anderson Decl., ¶1.  IBT has since dissolved and is no longer in business in New Hampshire or anywhere else.  Anderson Decl., ¶16.

NORTHWEST, as a licensee of TEG from 2003 to 2010, was in the business of providing accounting and administrative services for clients with self-directed individual retirement accounts, and acted in this capacity. Cmplt.,¶ 12 and Ex. 1.  On July 1, 2008, NORTHWEST and IBT entered into a custodial agreement (the "Custodial Agreement") under which IBT served as a custodian for NORTHWEST's clients' accounts.  Cmplt, ¶25.  On or around May 26, 2009, Mechanics Bank took over as successor custodian for the IRAs IBT previously had custodied for NORTHWEST and for other Entrust offices.  Cmplt., ¶ 32.

Importantly, under the Custodial Agreement between NORTHWEST and IBT, which is attached as Exhibit 2 to NORTHWEST's Complaint, NORTHWEST agreed that it would "voluntarily, knowingly, and irrevocably waive any right to have a jury participate in resolving any dispute between [NORTHWEST] and [IBT] arising out of or in any way related to this Agreement." Cmplt., Ex. 2, p. 10, ¶24.1.   NORTHWEST further agreed that:

> [A]ny **misunderstandings or disputes arising from this Agreement shall be decided by binding arbitration**, which shall be conducted upon request by either party in New Hampshire before one (1) arbitrator designated by the American Arbitration Association (the "AAA"), in accordance with the terms of the Commercial Arbitration Rules of the AAA and, to the maximum extent applicable, the United States Arbitration Act. (Title 9 of the United States Code). . . .   An arbitrator shall have no authority to award special, indirect, consequential, punitive, or other damages not measured by the prevailing party's actual damages.  To the maximum extent practicable, an arbitration proceeding under this Agreement shall be concluded within 180 days of the filing of the dispute with the AAA.   **The provisions of this arbitration clause shall survive any termination, amendment, or expiration of the Agreement**, and if any term, covenant, condition, or provision of this arbitration clause is found to be unlawful or invalid or unenforceable, the remaining parts of the arbitration clause shall not be affected thereby and shall remain fully enforceable."

Cmplt, Ex. 2, p. 10, ¶24.2 (emphasis added).  IBT, through counsel, alerted NORTHWEST to the arbitration clause on numerous occasions, most recently by email on November 23, 2010, in which IBT notified NORTHWEST of its intent to move to compel arbitration in this action. Declaration of John P. Kern in Support of Defendant The Entrust Group's Motion to Dismiss and Defendant IBT's Motion to Dismiss, or in the Alternative, to Compel Arbitration, filed herewith ("Kern Decl."), ¶ 6, Ex. C.  NORTHWEST has refused to submit to mandatory arbitration.

## E.    The Dispute Between TEG and NORTHWEST

In or around June 17, 2010, TEG discovered that NORTHWEST had breached the Contract for Services by (1) utilizing TEG's trademark and confidential information for services without consent and outside the scope permitted under the Contract for Services; (2) intentionally interfering with TEG's business relationships and contracts with third parties, such as by mailing letters to IRA clients stating that Washington Federal Bank was their new custodial

bank (when in fact NORTHWEST had no authority to appoint such a custodian); (3) failing to refer marketing prospects for IRA-related real estate transactions at any point during the life of the Contract for Services; (4) purporting to designate a new custodial bank for client IRAs without claimant's approval for consent; (5) creating and publishing a website advertising legal and investment services that linked to and improperly associated those services with NORTHWEST's self-directed IRA administration business, and (6) secretly entering into a contract with an alternate custodial bank under which TEG would have been cut off from its contractually-designated role in the cash administration program.  Kowalski Decl., ¶13.

Accordingly, on June 22, 2010 TEG served NORTHWEST with a Formal Notice of Breach of the Contract for Services.  TEG began investigating NORTHWEST's conduct and discovered further breaches, including that NORTHWEST was operating a website selling legal services and investment advice (strictly prohibited under the Contract for Services), and that NORTHWEST had attempt to compel a third party (Mechanics Bank) to wire funds to it from an account on which TEG was the only account holder.  On June 29, 2010 TEG served NORTHWEST with a second Formal Notice of Breach of the Contract for Services.  Kowalski Decl., ¶¶ 14-17.

TEG served NORTHWEST with several formal Notices of Breach, and eventually was forced in August of 2003 to terminate the Contract for Services and file the AAA Arbitration complaint.  Kowalski Decl., ¶¶ 14-17.  On August 16, 2010, NORTHWEST appeared in the AAA Arbitration (subjecting itself to jurisdiction) by filing a substantive response therein.  ¶4-7, and Exhibits A through D.

**F.** **NORTHWEST's "Allegations" Against IBT**

Notwithstanding the unambiguous arbitration clause in the Custodial Agreement, NORTHWEST filed its Complaint against IBT, the Entrust Group and Mechanic's Bank in this Federal District Court for the District of New Hampshire.  IBT is the only [former] New Hampshire company involved in this litigation.  Cmplt, ¶ 25.   Plaintiff NORTHWEST is a Washington LLC. Cmplt, ¶ 1.  Defendant The Entrust Group is a Delaware corporation with a

primary place of business in Oakland, California and Reno Nevada. Cmplt, ¶ 2; Kowalski Decl.,

§3. Defendant Mechanics Bank has a principal place of business in Northern California. Cmplt,

¶ 7.

Although NORTHWEST names IBT as a Defendant in this litigation, NORTHWEST's

complaint contains a sum total of nine paragraphs even mentioning IBT. NORTHWEST's only

"allegations" against IBT are as follows:

> 6. Defendant International Bank and Trust Company, Inc. is, upon information and belief, a wholly-owned subsidiary of The Entrust Group,[2] with a principal place of business in Concord, New Hampshire and is also in the business of managing uninvested IRA client funds. (Cmplt., p. 3).
>
> 25. On July 1, 2008, TEG and NORTHWEST entered into a custodial agreement with IBT ("IBT Custodial Agreement") in which IBT, located in Concord New Hampshire, would serve as custodian for all of NORTHWEST's client accounts. The IBT Custodial Agreement is attached as **Exhibit 2**. [to NORTHWEST's Complaint]. (Cmplt., p. 6).
>
> 26. The IBT Custodial Agreement expressly provided that, "[e]ither party may terminate this Agreement by providing 180 days prior written notice to the other party so long as termination is in accordance with Plan documents and disclosures." (*Id.*).
>
> 27. The IBT Custodial Agreement also expressly provided that "[n]either the Company [TEG] nor the Custodian [IBT] shall have any discretion over the investment of Client funds." (Cmplt., p. 7).
>
> 28. The IBT Custodial Agreement further provided that: [t]he assets of the Fund shall be held and accounted for separate from the other funds or properties of Company of Custodian." (*Id.*).
>
> 29. Pursuant to the IBT Custodial Agreement, all un-invested cash was to remain deposited in non-interest bearing and interest-bearing accounts offered through IBT. (*Id.*).
>
> 30. On or about May 26, 2009, TEG and IBT unilaterally terminated the IBT Custodial Agreement upon only 30 days notice, and required NORTHWEST to enter into a non-negotiable custodial agreement with Mechanics. . . . (Id.).
>
> 31. On or about June 3, 2009, NORTHWEST sent a letter to IBT and TEG, putting them on notice that they had breached the IBT Custodial Agreement, and that NORTHWEST was preserving all

---

[2] IBT was not a wholly-owned subsidiary of The Entrust Group [Anderson Decl., ¶6], but recognizes the procedural posture of its Motion to Dismiss, and, in any event, that fact is irrelevant given that NORTHWEST has failed to plead any causes of action at all against IBT and further, has attached the contract binding it to mandatory arbitration with IBT to its Complaint.

rights and remedies flowing from such breach, including the right
to appoint an independent custodian of NORTHWEST's choosing
in the future.  (Id.).

32.  Thereafter, Mechanics assumed the role from IBT of custodian
for NORTHWEST's client accounts. . . (*Id.*).

Each of the paragraphs set forth above are located in the factual background section of NORTHWEST's Complaint.  In contrast, IBT is not mentioned in any of NORTHWEST's six causes of action, and indeed, has not stated any claims against IBT.  *See*, Cmplt. pp. 12-16.  In contrast, both Mechanics Bank and The Entrust Group (against whom NORTHWEST has also agreed to arbitrate its claims [Cmplt, Ex. 1, p.14, ¶ 15(b)] in an arbitration that is already pending in the American Arbitration Association) are specifically identified in NORTHWEST's causes of action.  *See*, Cmplt., pp. 12-16.

## III.   ARGUMENT

NORTHWEST's Complaint against IBT should be dismissed for two simple reasons.  First, NORTHWEST has not actually stated any claims against IBT (suggesting that IBT's inclusion as a Defendant in this action is merely a tactic intended to drive up litigation costs and force the California defendants to defend themselves in a distant federal court).  Second, NORTHWEST agreed to arbitrate all misunderstandings or disputes "arising from" the Custodial Agreement.  Accordingly, NORTHWEST's attempts to maintain a lawsuit in this District Court are to no avail—should it wish to state a claim against IBT, it must do so in accordance with its contractual duty to arbitrate.

### A.      Motion to Dismiss Pursuant to 12(b)(6)

#### 1.      *Iqbal* Requires That a Complaint Be Facially Plausible in Order to Survive a Motion to Dismiss.

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations

omitted).  To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Ibid*.

In *Ashcroft v. Iqbal*, the Supreme Court confirmed the *Twombly* pleading standard, holding that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard [. . .] asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotations omitted); *see also*, *Iqbal.*, 129 S. Ct. at 1953 (affirming that *Twombly* governs the pleading standards in all civil actions).

The Court in *Iqbal* adopted a two-prong test for analyzing motions to dismiss:  <u>First</u>, the court must separate legal conclusions that are not entitled to an assumption of truth (even when couched as factual allegations) from factual allegations.[3]  <u>Second</u>, while assuming the veracity of the factual allegations, the court must decide whether a complaint states a plausible claim for a relief.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief.'"  *Id.*, 129 S. Ct. at 1950, citing FRCP 8(a)(2).  It is axiomatic that conduct that is merely consistent with unlawful actions does not plausibly suggest that the unlawful action has occurred. *Ibid.*; *Twombly*, 550 U.S. at 567-570.  Under these standards, NORTHWEST's claims against IBT fail to state a claim and should be dismissed.

---

[3] Unsupported conclusions are not entitled to an assumption of truth. Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions". *Iqbal.*, 129 S. Ct. at 1949-1950.

2.      NORTHWEST's Claims Against IBT Lack Facial Plausibility and Should
        Be Dismissed

NORTHWEST appears to have named IBT as a defendant in this litigation only as a

hook to drag non-New Hampshire entities into federal court across the country, because it has

not stated any claims against IBT in its complaint.  NORTHWEST's complaint contains a sum

total of nine paragraphs even mentioning IBT, each of which can be found in its factual

background section.  These paragraphs contain (1) information about IBT's identity (Cmplt, ¶6);

(2) a description of the Custodial Agreement quotations therefrom (Cmplt, ¶¶ 25-29); (3) a vague

allegation that IBT terminated the Custodial Agreement upon 30 days notice and "required

NORTHWEST to enter in to a non-negotiable custodial agreement with Mechanics (Cmplt., ¶

30); (4) a description of NORTHWEST's June 3, 2009 letter to IBT putting it on notice that it

considered IBT to have breached the Custodial Agreement and "preserving all rights and

remedies flowing from such breach, including the right to appoint an independent custodian of

NORTHWEST's choosing in the future," (Cmplt, ¶ 31); and, (5) the statement that Mechanics

subsequently assumed the role of custodian for NORTHWEST's clients' accounts.  (Cmplt., ¶

32).  NORTHWEST fails to mention either IBT or the Custodial Contract in any of its six causes

of action.  This cannot possibly meet even the notice pleading standard, and NORTHWEST's

Complaint against IBT should be dismissed pursuant to Rule 12(b)(6).  Since NORTHWEST has

failed to identify either facts or law that would state a claim for relief against IBT that is

plausible on its face, NORTHWEST's forum-shopping tactics must fail, and its complaint

against IBT should be dismissed. *Iqbal*, 129 S. Ct. at 1949.

        a.      NORTHWEST's Claim for Declaratory Relief Fails to State a
                Claim Against IBT.

The Declaratory Judgment Act provides plaintiffs with a cause of action *only* for cases of

"actual controversy" and provides that a Federal Court "may declare the rights and other legal

relations of any interested party *seeking such declaration*, whether or not further relief is or could

be sought."  28 U.S.C. § 2201(emphasis added).  In order to warrant relief, however, "the facts

alleged, under all the circumstances, [must] show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations and quotations omitted).  NORTHWEST has not alleged that there is *any* controversy between it and IBT, let alone a "substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*  Accordingly, it has failed to state a claim for declaratory relief against IBT.

> b. NORTHWEST Fails to State a Claim for Breach of Contract Against IBT.

In its cause of action for breach of contract, NORTHWEST alleges only that "TEG and Mechanics entirely disregarded their contractual obligations with NORTHWEST, put NORTHWEST's clients' funds at great risk, and caused NORTHWEST substantial damages and harm."  (Cmplt., p 13, ¶ 70).  Once again, neither IBT nor the Custodial Contract figure into NORTHWEST's claim.  In its factual allegations, NORTHWEST alleges that IBT only gave NORTHWEST 30 days notice and required before terminating the Custodial Agreement and required NORTHWEST to enter into a non-negotiable custodial agreement with Mechanics. (Cmplt., ¶ 30).[4]  These allegations fail to state a claim for breach of contract against IBT. Indeed, NORTHWEST has not alleged that it was damaged in any way by IBT's actions.  *See*, *Coyle v. Battles*, 147 N.H. 98, 100-101 (2001) (necessary elements of claim for breach of contract include breach and injury resulting therefrom).

> c. NORTHWEST Fails to State a Claim for Quantum Meruit/Unjust Enrichment Against IBT.

NORTHWEST also alleges a cause of action for unjust enrichment and quantum meruit. In New Hampshire, "unjust enrichment generally does not form an independent basis for a cause of action." *General Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 612 (N.H. 2010).

---

[4] IBT disputes these allegations, and maintains that it gave NORTHWEST 30 days' notice of appointment of the successor custodian, and did not terminate the Custodial Agreement upon only 30 days notice, but recognizes the procedural posture of a motion to dismiss.  Should the Court deny this Motion, IBT will address the substantial factual inaccuracies in NORTHWEST's complaint in an early Motion for Summary Judgment.

Moreover, all of NORTHWEST's allegations in its third cause of action for quantum meruit/unjust enrichment are asserted against other defendants. *See*, Cmplt., ¶¶ 72-75 (alleging that NORTHWEST conferred a measurable benefit on TEG and that TEG imposed additional fees on NORTHWEST and was thus unjustly enriched). Accordingly, NORTHWEST has failed to state a claim against IBT in its third cause of action for quantum meruit/unjust enrichment. *Ibid.* (plaintiff's legal conclusions that defendants received a substantial benefit without compensating plaintiff for the same failed to state a claim for restitution; where plaintiff failed to allege requisite facts that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment, plaintiffs also failed to state a claim for quantum meruit).

> d.      NORTHWEST Fails to Plead that IBT has Misappropriated its Trade Secrets

A claim for misappropriation of trade secrets under New Hampshire Revised Statutes chapter 350-B requires "disclosure or use" of a trade secret. NORTHWEST has not alleged that IBT has either disclosed or used its alleged trade secrets. *See*, Cmplt., ¶¶ 78-83. Accordingly, it has failed to state a claim against IBT for misappropriation of trade secrets, and its fourth cause of action must be dismissed.

> e.      NORTHWEST Fails to State a Claim Against IBT for Breach of the Implied Covenant of Good Faith and Fair Dealing

As with its other causes of action, NORTHWEST fails to plead facts that would demonstrate its entitlement to relief from IBT for breach of the implied covenant of good faith and fair dealing. Indeed, NORTHWEST has alleged only that TEG and Mechanics breached the implied covenant. *See*, Cmplt, ¶ 85 (alleging that "TEG and Mechanics breached the implied covenant of good faith and fair dealing which governs every contract."). Accordingly, NORTHWEST has failed to state a claim against IBT for breach of the implied covenant of good faith and fair dealing, and its fifth cause of action against IBT must be dismissed.

        f.      NORTHWEST Fails to State a Claim Under RSA 358-A:2 as a
              Matter of Law

In addition to (again) failing to plead that IBT has violated any statutory or common law,

NORTHWEST's sixth cause of action for violation of RSA 358-A:2 fails as a matter of law

because the New Hampshire Consumer Protection Act specifically exempts trade or commerce

that is subject to the jurisdiction of the bank commissioner from its scope.  *See*, N.H.R.S.A. 358-

A:3 Exempt Transactions ("The following transactions shall be exempt from the provisions of

this chapter: (I.) Trade or commerce that is subject to the jurisdiction of the bank

commissioner").

The State of New Hampshire vests exclusive jurisdiction over Consumer Protection

claims against banks such as IBT in the New Hampshire Bank Commissioner, not in the courts.

> The commissioner shall have exclusive authority and jurisdiction
> to investigate conduct that is or may be an unfair or deceptive act
> or practice under RSA 358-A and exempt under RSA 358-A:3, I or
> that may violate any of the provisions of Titles XXXV and
> XXXVI and administrative rules adopted thereunder.

N.H.R.S.A. 383:10-d.

The plain and unambiguous language of N.H.R.S.A. 383:10-d grants the banking

commissioner, not the courts, exclusive authority and jurisdiction over Plaintiff's claim.  *See*,

*Town of Rye Bd. of Selectmen v. Town of Rye Zoning Bd. of Adjustment*, 155 N.H. 622, 624

(2007) ("When a statute's language is plain and unambiguous, we need not look beyond it for

further indication of legislative intent, and we refuse to consider what the legislature might have

said or add language that the legislature did not see fit to incorporate in the statute.").  Thus,

NORTHWEST's sixth cause of action must also be dismissed.

**B.**      **NORTHWEST's Claims Should Be Dismissed With Prejudice Because
NORTHWEST is Bound to Arbitrate its Disputes Against IBT.**

NORTHWEST admits in its complaint that it entered into a Custodial Contract (Exhibit 2

to NORTHWEST's Complaint) with IBT on July 1, 2008.  Under the Custodial Contract,

NORTHWEST agreed to "voluntarily, knowingly, and irrevocably waive any right to have a jury

participate in resolving any dispute between [NORTHWEST] and [IBT] arising out or in any

way related to [the Custodial Contract.]."  Moreover, NORTHWEST agreed that "any

misunderstandings or disputes arising from [the Custodial Contract] shall be decided by binding

arbitration, which shall be conducted upon request by either party in New Hampshire," and that

the arbitration clause "shall survive any termination, amendment, or expiration of the [Custodial

Contract]."  Cmplt., Ex. 2 at p. 10, ¶¶24.1 and 24.2.  Rather, than submitting its dispute (if any)

with IBT to arbitration, as it agreed to do, NORTHWEST filed a complaint in this Court, thereby

inconveniencing IBT and the other Defendants, needlessly increasing the legal fees incurred by

all parties, and burdening this Court with a clearly arbitrable dispute.

       NORTHWEST admits that it is a party to the Custodial Contract with IBT.  Cmplt, ¶25.

The Court may consider the provisions of the Custodial Contract attached to NORTHWEST's

Complaint on a Motion to Dismiss.  *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st

Cir. 2003) (documents attached to complaint and incorporated therein by reference are treated as

part of the complaint for purposes of a Rule 12(b)(6) motion).   Here, the Custodial Contract

unambiguously provides that NORTHWEST's claims against IBT (if any) must be arbitrated.

       There is a strong federal policy in favor of arbitration.  "Congress enacted the Federal

Arbitration Act ("FAA"), codified as amended at 9 U.S.C. §1, et seq., in order to 'overcome

judicial resistance to arbitration and to declare a national policy favoring arbitration of claims

that parties contract to settle in that manner." *Braintree Labs., Inc. v. Citigroup Global Mkts.*

*Inc.*, 622 F.3d 36, 2010 U.S. App. LEXIS 20993, *15 (1st Cir. 2010) (citing *Vaden v. Discovery*

*Bank*, 129 S.Ct. 1262, 1271 (2009)).  Moreover, the District Court may <u>dismiss</u> plaintiff's

complaint in its order compelling arbitration.  *Braintree Labs*, 622 F.3d 36.  *See also*, *Next Step*

*Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) ("Where one side is

entitled to arbitration of a claim brought in court, in this circuit a district court can, in its

discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable");

*Bercovitch v. Baldwin Sch.*, 133 F.3d 141, 156 (1st Cir. 1998) ("a court may dismiss, rather than

stay, a case when all of the issues before the court are arbitrable.").

Here, NORTHWEST has failed to state any claims at all.  Nevertheless, NORTHWEST's entire relationship with IBT arose out of the Custodial Agreement.  (Cmplt., Ex. 2, ¶24.2). Indeed, each of NORTHWEST's factual allegations related to IBT refer to the Custodial Agreement.  (Cmplt, ¶¶ 25-31).  Thus, any disputes between NORTHWEST and IBT "arise from" the Custodial Agreement, and are arbitrable.  Accordingly, the Court should dismiss NORTHWEST's complaint against IBT in its entirety. *Next Step Med. Co.*, 619 F.3d at 71.

NORTHWEST may argue that under paragraph 24.2 of the Custodial Agreement, it is entitled to avoid arbitration because it may obtain equitable relief from a court of competent jurisdiction.  (Cmplt., Ex. 2, ¶24.2).  However, NORTHWEST's claims for equitable relief are against The Entrust Group and Mechanic's Bank, not against IBT.  *See*, Cmplt, page 16, Prayer for Relief, (a) and (b) (seeking "declaratory relief including a court order stating that it is administrator of its client accounts, and that such accounts have Washington Federal Bank as their custodian" and "injunctive relief preventing and restraining the Defendants from hindering [NORTHWEST]'s business operations and custodial relationship with Washington Federal Bank."); *see also*, Cmplt, ¶¶ 32 (Mechanics assumed the role of Custodian for NORTHWEST's client's accounts in mid-2009); 51-54, 61, 67 (alleging that a controversy exists among TEG, Mechanics, and NORTHWEST with respect to whether TEG can withhold its consent from NORTHWEST's custodial relationship with Washington Federal Bank).  As set forth in further detail above, NORTHWEST's claims, legal *or* equitable, are also against other entities.  In short, NORTHWEST has requested equitable relief, but it has not done so with regard to IBT.  Thus, the exception to the Custodial Agreement's mandatory arbitration clause does not apply here, and NORTHWEST's claims against IBT are all arbitrable and should be dismissed in their entirety.  *See*, *Next Step Med. Co.*, 619 F.3d at 71.[5]

---

[5] As set forth in detail in TEG's Motion to Dismiss, NORTHWEST's claims against TEG are also subject to mandatory arbitration.  Although the Custodial Agreement calls for the arbitration between IBT and NORTHWEST to be conducted in New Hampshire, the AAA Arbitration between NORTHWEST and TEG is already pending in Oakland, California, and IBT is willing to appear in the AAA Arbitration pending between TEG and NORTHWEST.

In the alternative, the Court should stay this litigation pending arbitration of NORTHWEST's claims.  *See*, 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court [. . .] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.")  *See also*, 9 U.S.C. §4 (party aggrieved by failure to arbitrate under a written agreement for arbitration may petition District Court for an order directing that arbitration proceed pursuant to the agreement to arbitrate).

## IV.  <u>CONCLUSION</u>

For all the foregoing reasons, IBT respectfully requests that the Court dismiss NORTHWEST's claims against it with prejudice, or, in the alternative, that this litigation be stayed pending arbitration of NORTHWEST's claims.

Respectfully submitted,

**INTERNATIONAL BANK & TRUST**

By Their Attorneys,

**RATH, YOUNG AND PIGNATELLI, P.C.**

One Capital Plaza
Concord, NH 03302-1500
(603) 226-2600

December 3, 2010          By:  /s/ Andrew W. Serell
                               Andrew W. Serell  (NH Bar No. 2298)

Of Counsel:
John P. Kern, Bar No. CA 206001
Amanda M. Knudsen, Bar No. CA 252752
Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA  94111
(415) 291-7400

## <u>CERTIFICATE OF SERVICE</u>

     I, Andrew W. Serell, hereby certify that the foregoing document was filed with the Court through the ECF system on the 3rd day of December, 2010, and service will be made electronically by the Court's system to all counsel of record.

December 3, 2010        By: <u>/s/ Andrew W. Serell</u>
                          Andrew W. Serell

300179420.1