UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>RealTrust IRA Alternatives, LLC
f/k/a Entrust Northwest, LLC</u>

    v.                                              Civil No. 10-cv-382-LM

<u>The Entrust Group, International
Bank & Trust, and Mechanics Bank</u>

**<u>O R D E R</u>**

RealTrust IRA Alternatives, LLC ("RealTrust") has sued three defendants in six counts. RealTrust is an administrator of self-directed individual retirement plans and was once a licensee of The Entrust Group ("TEG"), which provides self-directed IRA plan administration. RealTrust asserts claims arising out of, among other things, the manner in which TEG arranged for Mechanics Bank ("Mechanics") and First Trust Company of Onaga ("Onaga") to provide custodial banking services for its clients' uninvested funds.[1]

Before the court is TEG's motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), improper venue,

---

[1] TEG appears to be a defendant in Count I (in which RealTrust seeks a declaratory judgment), Count II (breach of contract), Count III (quantum meruit/unjust enrichment); Count IV (misappropriation of trade secrets); Count V (breach of the implied covenant of good faith and fair dealing), and Count VI (violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A).

Fed. R. Civ. P. 12(b)(3), and failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).[2] RealTrust objects, on the merits, to TEG's motion to dismiss,[3] and, in the event its objection on the merits does not carry the day, it requests time to conduct jurisdictional discovery. For the reasons given, RealTrust's request for discovery is denied, and TEG's motion to dismiss is granted.

### Jurisdictional Discovery

This action was filed on August 31, 2010. In its objection to Mechanics' motion to dismiss, filed on December 20, RealTrust devotes nearly six pages to arguing that this court has personal jurisdiction over Mechanics. Then, in the very last sentence of

---

[2] TEG's motion also asks the court either to compel arbitration pursuant to 9 U.S.C. § 1, et seq. and dismiss this case, or, in the alternative, to stay this action pending the outcome of an ongoing arbitration proceeding between itself and RealTrust. Because the court lacks personal jurisdiction over TEG, for the reasons given in this order, there is no need to determine whether TEG's request is properly before the court, see LR 7.1(a)(1) ("[f]ilers shall not combine multiple motions seeking separate and distinct relief into a single filing,"), and no need to decide whether that request is meritorious.

[3] TEG also moves to strike, in whole or in part, eleven of the sixteen exhibits attached to RealTrust's objection. Its grounds for so moving include inadequate authentication, hearsay, and lack of relevance, among others. But, because RealTrust relies on just one of the challenged exhibits in its personal-jurisdiction argument, and because the court would grant TEG's motion to dismiss even if it were to consider all of the challenged exhibits, no good purpose would be served by addressing TEG's motion to strike item by item. Rather, it is denied as moot.

a twenty-one-page objection, RealTrust states: "ALTERNATIVELY, the plaintiff seeks 90 days to conduct discovery into jurisdiction and fraud, and to file an Amended Complaint." Pl.'s Obj. (doc. no. 32), at 20.  TEG does not appear to respond to RealTrust's discovery request.

Nevertheless, RealTrust's request for jurisdictional discovery is denied for the following reasons.  First, it violates Local Rule 7.1(a)(1), which provides that "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing."  If RealTrust had harbored a genuine concern about its ability to object to Mechanics' motion without additional information, it could have – and should have – filed a motion for discovery rather than a lengthy argument on the merits with a request for discovery tacked on at the end.  See Daigle v. Stulc, Civ. No. 09-343-B-W, 2009 WL 4348393, at *4 n.9 (D. Me. Nov. 24, 2009) ("As a practice pointer, Daigle's counsel should have sought leave to conduct jurisdictional discovery by motion.").

Moreover, even if RealTrust's request were properly before the court, it would be denied on the merits.  "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."  Platten

3

v. HG Berm. Exempted Ltd., 437 F.3d 118, 139 (1st Cir. 2006) (quoting Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962, 964 (1st Cir. 1997)).  The requirement that "a plaintiff must be diligent in preserving his rights," United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001), "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted."  Id. (citing Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001)). That is, a plaintiff seeking jurisdictional discovery should present the district court with a "detailed description of the 'additional pertinent avenues of inquiry' that it hope[s] to pursue."  Swiss Am. Bank, 274 F.3d at 626 (quoting Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973)).  "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request."  Swiss Am. Bank, 274 F.3d at 626 (citing Crocker v. Hilton Int'l Barb., Ltd., 976 F.2d 797, 801 (1st Cir. 1992)).  That is the case here.

RealTrust's request for discovery comes nowhere close to meeting the standard established by Platten and Swiss American Bank.  RealTrust presents no facts, no avenue of inquiry, and no argument about why jurisdiction would be found if discovery were permitted.  It is merely a throw-away line at the end of an

4

objection on the merits to Mechanics Rule 12(b)(2) motion. Accordingly, RealTrust's request for jurisdictional discovery is denied. Having denied RealTrust's discovery request, the court now turns to the issue of personal jurisdiction.

### Personal Jurisdiction Principles

"When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). When, as here, the court does not conduct a hearing on the issue, it employs "the prima facie method in deciding the jurisdictional question." Lechoslaw, 618 F.3d at 54 (citation omitted). "This inquiry asks 'whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction.'" Id. (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).

"New Hampshire's long-arm statute reaches to the full extent that the Constitution allows." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999) (citing Phelps v. Kingston, 130 N.H. 166, 171 (1987); Computac, Inc. v. Dixie News Co., 124 N.H. 350, 355 (1983)). Thus, the only question here is whether the exercise of personal

jurisdiction over TEG would comport with the principles of due process. See Lechoslaw, 618 F.3d at 54. It would not.

"The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants." Id. (quoting Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). As the court of appeals has explained:

> First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

Id. Finally, a "plaintiff must demonstrate that each of these three requirements [i.e., relatedness, purposeful availment, and reasonableness] is satisfied." Phillips, 530 F.3d at 27.

**Background**

The following factual recitation is drawn from RealTrust's complaint. In 1993, RealTrust, a Washington limited liability company, entered into an agreement ("Contract for Services") with TEG, a Delaware corporation with a principal place of business in California. The Contract for Services, which includes a choice-of-law provision designating California law as governing the agreement, required RealTrust to enter into a

6

custodial agreement with a bank, to hold its clients' uninvested assets.

On July 1, 2008, RealTrust entered into a custodial agreement with International Bank & Trust ("IBT"), which had a principal place of business in Concord, New Hampshire. RealTrust alleges, on information and belief, that IBT was a wholly owned subsidiary of TEG.  RealTrust also alleges that the parties to the July 1, 2008, agreement were itself, IBT, and TEG, see Compl. ¶ 25, but the copy of that agreement appended to the complaint identifies only RealTrust and IBT as the parties to it, see Compl., Ex. 2, at 1, 11.

About a year after the IBT custodial agreement was executed, IBT terminated it without giving RealTrust the amount of notice required by the agreement.  Subsequently, TEG required RealTrust to enter into another custodial agreement ("the Mechanics custodial agreement") that had three parties: TEG, RealTrust, and Mechanics.  The Mechanics custodial agreement, which lists Mechanics' address as Walnut Creek, California, includes a provision under which it "will be governed by and construed in accordance with California law, without regard to its conflict of law provisions."  Compl., Ex. 3, at 8.

About a year after the Mechanics custodial agreement was executed, TEG informed RealTrust's clients that it was terminating that agreement and naming Onaga as the new

7

custodian. It did so without giving RealTrust the amount of notice required by the Mechanics custodial agreement. RealTrust, in turn, has taken steps to appoint Washington Federal Bank ("WFB") as the successor custodian. Finally, on July 29, 2010, RealTrust notified TEG that it was terminating the Contract for Services, for cause.

This suit arises from RealTrust's dissatisfaction with the manner in which TEG changed custodians, from IBT to Mechanics, and from Mechanics to Onaga, as well as its dissatisfaction with other aspects of the management of its clients' assets.

## Discussion

TEG argues that RealTrust has failed to establish the basis for either general or specific jurisdiction. For its part, RealTrust appears to concede, wisely, that the court lacks general jurisdiction over TEG. Accordingly, the court turns to the three requirements RealTrust must meet to establish specific jurisdiction over TEG: relatedness, purposeful availment, and reasonableness.

RealTrust's attempt to establish relatedness is not susceptible of easy paraphrase and so, in the interest of stating the argument accurately, the court quotes RealTrust's brief rather more extensively than it might otherwise:

> The instant litigation is related to, and resulting from, TEG's forum state contacts, including furthering

8

its business relationship and receiving profits from RealTrust.  IBT, a wholly-owned subsidiary of TEG, was created, "under the provisions of Chapter 392 of the New Hampshire Revised Statutes Annotated" for the purpose existing as a "trust company under the laws at [sic] the state of New Hampshire."  See **Exhibit 4**.[4]  IBT contracted for custodial services with RealTrust in 2008.  When TEG ceased using IBT and unilaterally transferred the custodial role to Mechanics, it expounded upon the already made minimum contacts that TEG had with New Hampshire.  By and through IBT, TEG has formed an inextricable bond among New Hampshire TEG, [RealTrust], IBT and Mechanics, one that is not dissolved simply by changing a name.  In addition, TEG's business is inextricably hinged to the need for a custodian, and therefore its business with RealTrust could not have been transacted without TEG's relationship with IBT in New Hampshire.

When Mechanics assumed the role of custodian, it necessarily engaged in a number of business transactions with the outgoing custodian, New Hampshire-based IBT.  TEG's involvement in IBT since its inception, as well as its appointment of Mechanics as successor custodian, strengthened the New Hampshire links and contacts among all entities.  Similarly, when Mechanics was tossed to the wayside by TEG and Onaga picked up the slack, Onaga had to avail itself of the same rights and responsibilities that its predecessors, Mechanics and IBT had used and discarded.  See **Exhibit 16** for samples of contacts with a forum state when taking over the custodial role.

The instant litigation arises from the wrongful taking of fees, and other fraudulent actions, committed by the custodial bank(s) and TEG.  Whereas all of the entities involved in this action are protected under the New Hampshire umbrella that was provided by TEG when it created and maintained IBT in New Hampshire, surely the Court must find that the litigation is related to Mechanics' minimum (or

---

[4] For the record, the quotations preceding RealTrust's citation of Exhibit 4 are actually drawn from Exhibit 13.  See Pl.'s Obj., Ex. 13 (doc. no. 32-13), at 1.

9

> substantial, as the case may be) contacts with the
> forum state.

Pl.'s Obj., at 14-15.  What is notably missing from that argument is _any_ adequately supported reference to _any_ contacts with New Hampshire on the part of TEG.

The relatedness requirement is met when a plaintiff demonstrates that his or her claims are directly related to the defendant's contacts with the forum state.  <u>See</u> <u>Adams</u>, 601 F.3d at 6.  In the portion of its brief devoted to the New Hampshire long-arm statute, but not in its discussion of the relatedness requirement, RealTrust identifies three business transactions that, in its view, are sufficient to subject TEG to personal jurisdiction: (1) TEG's establishment and ownership of IBT; (2) TEG's solicitation of self-directed IRA business through a nationally reaching web site; and (3) TEG's funneling of funds so solicited through its New Hampshire subsidiary, IBT.  While RealTrust alleges on information and belief that IBT was a wholly owned subsidiary of IBT, it has proffered no evidence in support of that allegation and, indeed, the evidence it has proffered disproves it.  <u>See</u> Pl.'s Obj., Ex. 13, at 3-11 (listing subscribers, which do not include TEG), 14-16 (same), 23 (identifying International Bancorp Holdings, Inc. as sole shareholder in re-organized IBT), 24 (same).  And, RealTrust has proffered no evidence that TEG has funneled money through IBT.

10

More importantly, none of RealTrust's six claims against TEG is related to the establishment of IBT, the solicitation of business from New Hampshire customers, or the funneling of money through IBT.  Thus, none of the three supposed contacts RealTrust identifies supports the exercise of personal jurisdiction by this court. That said, the court turns to each of RealTrust's claims against TEG.

In Count I, the request for a declaratory judgment, RealTrust makes two assertions: (1) that "[a]n actual and justiciable controversy exists among TEG, Mechanics, and [RealTrust], with respect to whether TEG can maintain a custodial relationship with Onaga without [RealTrust's] consent, and whether TEG can withhold its consent from [RealTrust's] custodial relationship with WFB," Compl. ¶ 67, and that "[a]n actual and justiciable controversy exists between TEG and [RealTrust] with respect to whether TEG can maintain a custodial relationship with Onaga without [RealTrust's] consent, and whether TEG can withhold its deposits from [RealTrust]" Compl. ¶ 67.  RealTrust has proffered no evidence of any conduct by TEG either in New Hampshire, or directed toward the state, that is in any way related to the issues on which it seeks a declaratory judgment.  Rather, those issues all appear to arise from either the Contract for Services or the Mechanics custodial agreement, neither of which involved a New Hampshire party or had any other

11

New Hampshire nexus. Thus, as to Count I, RealTrust has failed to satisfy the relatedness requirement.

Counts II and V sound in contract. Neither claim, however, indicates either the contract(s) on which it is based[5] or the conduct by TEG that, allegedly, breached the contract(s) on which it is based. In the spirit of giving RealTrust every possible benefit of the doubt, the court will operate under the presumption that RealTrust is asserting that: (1) TEG breached the Contract for Services by engaging Onaga without RealTrust's consent, by withholding consent from RealTrust's engagement of WFB, and by retaining deposits rather than turning them over to RealTrust; and (2) TEG breached the Mechanics custodial agreement by terminating it without giving RealTrust the amount of notice required by the agreement.

When a plaintiff's claim "sound[s] in contract, . . . [the court] look[s] to whether 'the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach.'" Adams, 601 F.3d at 6 (quoting Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)) (internal quotation marks omitted).

---

[5] Because TEG was not a party to the IBT custodial agreement, and because that agreement expressly provides that the "Agreement is solely for the benefit of the undersigned parties" and that "[n]othing contained in [it] shall be deemed to confer any right or benefit on any other person or entity," Compl., Ex. 2, at 11, RealTrust's contract claims against TEG cannot be based on the IBT custodial agreement.

12

The Contract for Services is an agreement between a California corporation (TEG) and a Washington limited liability company (RealTrust), which includes a choice-of-law provision designating California law as governing the agreement. Compl. Ex. 1, at 15, 16. RealTrust proffers no evidence of any activity by TEG in New Hampshire that was instrumental in the formation of the agreement between RealTrust and TEG. Similarly, RealTrust proffers no evidence of any activity by TEG in New Hampshire that was instrumental in TEG's engagement of Onaga, its failure to consent to RealTrust's engagement of WFB, or its retention of deposits that RealTrust says it should have relinquished to it.

The Mechanics custodial agreement is an agreement between a California resident (Mechanics), a Washington resident (RealTrust), and a Nevada (or California) resident (TEG),[6] which includes a choice-of-law provision designating California law as governing the agreement. Compl., Ex. 3, at 8, 9. RealTrust proffers no evidence of any activity by TEG in New Hampshire that was instrumental in the formation of the agreement between RealTrust, Mechanics, and TEG. The alleged breach was the failure of a California party to give adequate notice of

---

[6] In RealTrust's complaint, TEG is described as a Delaware corporation with a principal place of business in Oakland, California. Compl. ¶ 2. But, in the copy of the Mechanics custodial agreement appended to the complaint, TEG is shown as having a Nevada address. Compl., Ex. C, at 9.

13

termination to a Washington party, see Compl. ¶¶ 36, 39, 41, and RealTrust proffers no evidence of any activity by TEG in New Hampshire that was instrumental in its alleged failure to provide RealTrust with timely notice of its termination of the Mechanics custodial agreement. Accordingly, as to Counts II and V, RealTrust has failed to satisfy the relatedness requirement.

Count III is RealTrust's claim for quantum meruit, in which it alleges that in 2007, TEG imposed a cash management scheme from which it earned between $30,000 and $40,000 per year in fees that were not authorized by the Contract for Services. As explained above, RealTrust has proffered no evidence of any activity by TEG in New Hampshire that was instrumental in the formation of the Contract for Services. Nor has it proffered evidence that TEG's imposition of its new cash management scheme, or its collection of fees based thereon, involved any contact with New Hampshire. Accordingly, as to Count III, RealTrust has failed to satisfy the relatedness requirement.

In Count IV, RealTrust asserts that when TEG used RealTrust's client list, after RealTrust terminated the Contract for Services, TEG misappropriated a trade secret in violation of New Hampshire's Uniform Trade Secrets Act. RealTrust also characterizes its client accounts as trade secrets that TEG misappropriated by failing to turn them over to RealTrust upon RealTrust's termination of the Contract for Services. There is

no indication on the face of the complaint that TEG had any contact with New Hampshire after July 29, 2010, that had anything to do with its alleged misappropriation of RealTrust's client list and client accounts. Moreover, RealTrust has proffered no evidence of any such contacts. Accordingly, as to Count IV, RealTrust has failed to satisfy the relatedness requirement.

Finally, as best the court can tell, RealTrust's CPA claim in Count VI is based on unauthorized use of client funds "as set forth above," Compl. ¶ 88, and violations of New Hampshire banking laws. In support of that claim, RealTrust alleges that TEG engaged in banking practices and describes itself as a consumer of TEG's banking services. Leaving aside the question of whether it is even possible to violate the New Hampshire CPA by violating New Hampshire's banking laws,[7] RealTrust has proffered no evidence that TEG ever engaged in any banking activities in New Hampshire or had any other involvement with its clients' assets in New Hampshire. Necessarily, then, as to Count VI, RealTrust has failed to satisfy the relatedness requirement.

In sum, RealTrust has proffered no evidence of any contact between TEG and New Hampshire that is related to the conduct on

---

[7] See RSA 358-A:3, I (exempting "[t]rade or commerce that is subject to the jurisdiction of the bank commissioner" from the provisions of the CPA).

which RealTrust bases its claims against TEG. Accordingly, it would run counter to the principles of due process for the court to exercise personal jurisdiction over TEG. See Phillips, 530 F.3d at 27 (requiring plaintiff to demonstrate relatedness, purposeful availment, and reasonableness before court may assert personal jurisdiction over defendant). Because the court has determined that RealTrust has failed to satisfy the relatedness requirement, there is no need to consider purposeful availment or reasonableness. See Adams, 601 F.3d at 8 (declining to undertake reasonableness analysis when plaintiff failed to proffer sufficient evidence to satisfy purposeful availment requirement) (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001)).

## Venue

TEG also argues that venue in this judicial district is improper because none of the acts or omissions it is alleged to have committed took place in New Hampshire. RealTrust responds as follows:

> [T]he events giving rise to ENW's claims may not have occurred within the delineated borders of the state, but are sufficiently related to the state so as to confer personal jurisdiction over TEG to the state of New Hampshire. It follows then, that TEG's (substantial) minimum contacts within the state are enough to establish "relatedness" as well as to show that venue is proper.

> Again, TEG is correct in stating "[i]n determining whether venue is proper in New Hampshire, the Court must look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." See TEG's Motion to Dismiss, p. 14, citing Uffner v. la Reunion Francaise, S.A., 244 F.33d [sic] 38, 42 (1st Cir. 2001). What TEG fails to see, or acknowledge, however, is that its conduct in creating, and utlizing IBT, among other things, has established an entire sequence of events underlying ENW's claim. Moreover, the sequence of events that has been established by TEG is at the very heart of this litigation, is based, in part, upon the New Hampshire laws that afforded IBT its very existence, and cannot now be avoided by TEG on the bold, yet unsupported assertion, that it has not subjected itself to personal jurisdiction in New Hampshire. For these reasons, and because a substantial part of the events giving rise to ENW's claims occurred within this judicial district by and through IBT, venue is proper.

Pl.'s Obj., at 19-20. TEG counters by pointing out RealTrust's seeming concession that the events giving rise to its claims may not have occurred within the borders of New Hampshire and then citing the federal venue statute. That is, indeed, sufficient to demonstrate that venue is not proper in this judicial district.

Under the circumstances of this case, venue is proper only in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2). Regarding RealTrust's purported concession, RealTrust argues that while "the events giving rise to [its] claims may not have occurred within the

delineated borders of the state . . . a substantial part of the events giving rise to [its] claims occurred within this judicial district by and through IBT." Pl.'s Obj., at 19-20. Leaving aside the convoluted semantics, RealTrust's argument fails because, as noted above, RealTrust has produced evidence that TEG did <u>not</u> create IBT and that IBT was <u>not</u> TEG's wholly owned subsidiary. Accordingly, there is no basis for arguing that any of the events giving rise to RealTrust's claims against TEG took place in this district. Moreover, RealTrust's theory that a court's personal jurisdiction over a defendant also establishes proper venue in that court's judicial district is both unsupported in RealTrust's brief and legally incorrect. And, even if that theory were correct, it would not apply here, because the court lacks personal jurisdiction over TEG. In sum, this judicial district is not a proper venue for RealTrust's claims against TEG.

## Conclusion

As noted above, TEG's motion to strike (doc. no. 43) is denied as moot. But, for the reasons given, TEG's motion to

dismiss for lack of personal jurisdiction (doc. no. 17) is granted. Accordingly, TEG is dismissed from this case.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: March 21, 2011

cc: John W. Dennehy, Esq.
    Steven J. Dutton, Esq.
    Scott H. Harris, Esq.
    Susan K. Jamison, Esq.
    John Kern, Esq.
    Amanda M. Knudsen, Esq.
    Coleen M. Penacho, Esq.
    Gregory M. Sargent, Esq.
    Andrew W. Serell, Esq.
    Howard A. Slavitt, Esq.