UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>RealTrust IRA Alternatives, LLC</u>
<u>f/k/a Entrust Northwest, LLC</u>

    v.                                                   Civil No. 10-cv-382-LM

<u>The Entrust Group, International</u>
<u>Bank & Trust, and Mechanics Bank</u>

**O R D E R**

RealTrust IRA Alternatives, LLC ("RealTrust") has sued three defendants in six counts. RealTrust is an administrator of self-directed individual retirement plans and was once a licensee of The Entrust Group ("TEG"), which provides self-directed IRA plan administration. RealTrust asserts claims arising out of, among other things, the manner in which TEG arranged for Mechanics Bank ("Mechanics") and First Trust Company of Onaga ("Onaga") to provide custodial banking services for its clients' uninvested funds.[1] Before the court is Mechanics' motion to dismiss for lack of personal jurisdiction,

---

[1] Mechanics appears to be a defendant in Count I (in which RealTrust seeks a declaratory judgment), Count II (breach of contract), Count V (breach of the implied covenant of good faith and fair dealing), and Count VI (violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A).

1

Fed. R. Civ. P. 12(b)(2).[2] RealTrust objects on the merits and, in the event its objection on the merits does not carry the day, it requests time to conduct jurisdictional discovery. For the reasons given, RealTrust's request for discovery is denied, and Mechanics' motion to dismiss is granted.

### Jurisdictional Discovery

This action was filed on August 31, 2010. By letter dated September 13, 2010, Mechanics' counsel put RealTrust on notice that Mechanics intended to challenge the exercise of personal jurisdiction over it by this court. Mechanics then waited nearly three months before filing the motion now before the court, thus giving RealTrust an opportunity to deal with the jurisdictional issues it raised. In its objection to Mechanics' motion to dismiss, filed on December 20, RealTrust devotes nearly seven pages to arguing that this court has personal jurisdiction over Mechanics. Then, in the very last sentence of a twenty-page objection, RealTrust states: "ALTERNATIVELY, the plaintiff seeks 90 days to conduct discovery into jurisdiction

---

[2] Mechanics' motion also asks the court to stay this action pending the outcome of an ongoing arbitration proceeding involving TEG and RealTrust. Because the court lacks personal jurisdiction over Mechanics, for the reasons given in this order, there is no need to determine whether Mechanics' request for a stay is properly before the court, see LR 7.1(a)(1) ("[f]ilers shall not combine multiple motions seeking separate and distinct relief into a single filing"), and no need to decide whether that request is meritorious.

and fraud, and file an Amended Complaint." Pl.'s Obj. (doc. no. 34), at 20. Mechanics argues that RealTrust's request is untimely. It points out, correctly, that it notified RealTrust of the jurisdictional issue in September, that RealTrust said nothing about a need for discovery for nearly four months, and did so only after putting Mechanics to the trouble of moving to dismiss and then defending against Mechanics' motion on the merits.

RealTrust's request for jurisdictional discovery is denied for the following reasons. First, it violates Local Rule 7.1(a)(1), which provides that "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing." If RealTrust had harbored a genuine concern about its ability to object to Mechanics' motion without additional information, it could have – and should have – filed a motion for discovery rather than a lengthy argument on the merits with a request for discovery tacked on at the end. See Daigle v. Stulc, Civ. No. 09-343-B-W, 2009 WL 4348393, at *4 n.9 (D. Me. Nov. 24, 2009) ("As a practice pointer, Daigle's counsel should have sought leave to conduct jurisdictional discovery by motion.").

Moreover, even if RealTrust's request were properly before the court, it would be denied on the merits. "[A] diligent

3

plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 139 (1st Cir. 2006) (quoting Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962, 964 (1st Cir. 1997)). The requirement that "a plaintiff must be diligent in preserving his rights," United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001), "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. (citing Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001)). That is, a plaintiff seeking jurisdictional discovery should present the district court with a "detailed description of the 'additional pertinent avenues of inquiry' that it hope[s] to pursue." Swiss Am. Bank, 274 F.3d at 626 (quoting Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973)). "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." Swiss Am. Bank, 274 F.3d at 626 (citing Crocker v. Hilton Int'l Barb., Ltd., 976 F.2d 797, 801 (1st Cir. 1992)). That is the case here.

RealTrust's request for discovery comes nowhere close to meeting the standard established by Platten and Swiss American Bank. RealTrust presents no facts, no avenue of inquiry, and no argument about why jurisdiction would be found if discovery were permitted. It is merely a throw-away line at the end of an objection on the merits to Mechanics Rule 12(b)(2) motion. Accordingly, RealTrust's request for jurisdictional discovery is denied. Having denied RealTrust's discovery request, the court now turns to the issue of personal jurisdiction.

**Personal Jurisdiction Principles**

"When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). When, as here, the court does not conduct a hearing on the issue, it employs "the prima facie method in deciding the jurisdictional question." Lechoslaw, 618 F.3d at 54 (citation omitted). "This inquiry asks 'whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction.'" Id. (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).

"New Hampshire's long-arm statute reaches to the full extent that the Constitution allows." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999) (citing Phelps v. Kingston, 130 N.H. 166, 171 (1987); Computac, Inc. v. Dixie News Co., 124 N.H. 350, 355 (1983)). Thus, the only question here is whether the exercise of personal jurisdiction over Mechanics would comport with the principles of due process. See Lechoslaw, 618 F.3d at 54. It would not.

"The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants." Id. (quoting Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). As the court of appeals has explained:

> First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

Id. Finally, a "plaintiff must demonstrate that each of these three requirements [i.e., relatedness, purposeful availment, and reasonableness] is satisfied." Phillips, 530 F.3d at 27.

6

**Background**

The following factual recitation is drawn from RealTrust's complaint. RealTrust, a Washington limited liability company, became involved with Mechanics, a corporation with a principal place of business in California, during the course of its (RealTrust's) business relationship with TEG, a Delaware corporation with a principal place of business in California. RealTrust's relationship with TEG was governed by a Contract for Services which required RealTrust to enter into a custodial agreement with a bank, to hold its clients' uninvested assets. On July 1, 2008, RealTrust entered into a custodial agreement with International Bank & Trust ("IBT"),[3] which had a principal place of business in Concord, New Hampshire.

About a year after the IBT custodial agreement was executed, IBT terminated that agreement without giving RealTrust the amount of notice required by the agreement. Subsequently, TEG required RealTrust to enter into a custodial agreement with itself (TEG) and Mechanics ("the Mechanics custodial agreement"). The Mechanics custodial agreement, which lists Mechanics' address as Walnut Creek, California, includes a

---

[3] In its complaint, RealTrust alleges that the parties to the July 1, 2008, agreement were itself, IBT, and TEG, see Compl. ¶ 25, but the copy of that agreement appended to the complaint identifies only RealTrust and IBT as the parties to it, see Compl., Ex. 2, at 1, 11.

provision under which it "will be governed by and construed in accordance with California law, without regard to its conflict of law provisions." Compl., Ex. 3, at 8.

About a year after the Mechanics custodial agreement was executed, TEG informed RealTrust's clients that it was terminating that agreement and naming Onaga as the new custodian. It did so without giving RealTrust the amount of notice required by the Mechanics custodial agreement. RealTrust, in turn, has taken steps to appoint Washington Federal Bank ("WFB") as the successor custodian.

This suit arises from RealTrust's dissatisfaction with the manner in which TEG changed custodians, from IBT to Mechanics, and from Mechanics to Onaga, as well as its dissatisfaction with other aspects of the management of its clients' assets.

### Discussion

Mechanics argues that RealTrust has failed to establish the basis for either general or specific jurisdiction. For its part, RealTrust appears to concede, wisely, that the court lacks general jurisdiction over Mechanics. Accordingly, the court turns to the three requirements RealTrust must meet to establish specific jurisdiction over Mechanics: relatedness, purposeful availment, and reasonableness.

RealTrust's attempt to establish relatedness is not susceptible of easy paraphrase and so, in the interest of stating the argument accurately, the court quotes RealTrust's brief rather more extensively than it might otherwise:

> IBT, a wholly-owned subsidiary of TEG, was created, "under the provisions of Chapter 392 of the New Hampshire Revised Statutes Annotated" for the purpose existing as a "trust company under the laws at [sic] the state of New Hampshire." See **Exhibit 4**. . . . When TEG ceased using IBT and unilaterally transferred the custodial role to Mechanics, it expounded upon the already made minimum contacts that TEG had with New Hampshire. By and through IBT, TEG has formed an inextricable bond among New Hampshire TEG, [RealTrust], IBT and Mechanics, one that is not dissolved simply by changing a name. When Mechanics assumed the role of custodian, it necessarily engaged in a number of business transactions with the outgoing custodian, New Hampshire-based IBT. TEG's involvement in IBT since its inception, as well as its appointment of Mechanics as successor custodian, strengthened the New Hampshire links and contacts among all entities. Similarly, when Mechanics was tossed to the wayside by TEG and Onaga picked up the slack, Onaga had to avail itself of the same rights and responsibilities that its predecessors, Mechanics and IBT had used and discarded.
>
> Mechanics transacted business in New Hampshire and made a profit doing so, it only turned tail and ran from its relationship with TEG after the FDIC threatened to shut it down. **Exhibit 6**. The instant litigation arises from the wrongful taking of fees, and other fraudulent actions, committed by the custodial bank(s) and TEG. Whereas all of the entities involved in this action are protected under the New Hampshire umbrella that was provided by TEG when it created and maintained IBT in New Hampshire, surely the Court must find that the litigation is related to Mechanics' minimum (or substantial, as the case may be) contacts with the forum state.

9

Pl.'s Obj., at 14-15.  What is notably missing from that argument, and from the exhibits cited therein, is <u>any</u> mention of <u>any</u> contacts with New Hampshire on the part of Mechanics.

The relatedness requirement is met when a plaintiff demonstrates that his or her claims are directly related to the defendant's contacts with the forum state.  See Adams, 601 F.3d at 6.  RealTrust's claims against Mechanics include a request for a declaratory judgment (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count V), and violation of the New Hampshire Consumer Protection Act ("CPA") (Count VI).  In the body of its complaint, RealTrust alleges that "Mechanics assumed the role from IBT of custodian for [RealTrust's] client accounts without using due diligence to determine if TEG had facilitated the custodial arrangement by first giving proper notice to [RealTrust]," Compl. ¶ 32, and that "[i]n doing so, Mechanics took over business relations established in New Hampshire that resulted from various breaches of contract," id.

While those allegations sound like an accusation of wrongdoing, RealTrust does not appear to base any of its claims on those accusations.  Moreover, even if Mechanics could face legal liability for failing to undertake due diligence with regard to the state of IBT's contractual relationship with

10

RealTrust, the court is not at all certain that the failure to perform an act, such as due diligence, would count as contact with a forum state for purposes of establishing personal jurisdiction.  So, notwithstanding RealTrust's allegations about due diligence, the court disregards those allegations in the following description of RealTrust's claims.

Regarding the request for a declaratory judgment, RealTrust asserts: "An actual and justiciable controversy exists among TEG, Mechanics, and [RealTrust], with respect to whether TEG can maintain a custodial relationship with Onaga without [RealTrust's] consent, and whether TEG can withhold its consent from [RealTrust's] custodial relationship with WFB."  Compl. ¶ 67.  The three legal claims against Mechanics, Counts II, V, and VI, do not identify the conduct on which they are based, and are so vaguely stated that it is no simple matter to discern the purported relationship between those claims and Mechanics' contacts with New Hampshire.  That said, the court will operate under the presumption that Counts II and V are based on Mechanics' alleged termination of its custodial agreement without giving RealTrust proper notice, and that Count VI is based on allegations about Mechanics' "unauthorized use of client funds," Compl. ¶ 88, and its violation of New Hampshire banking laws and regulations, see id. at 89.

Turning first to Count I, the request for a declaratory judgment, RealTrust has proffered no evidence of any conduct by Mechanics either in New Hampshire or directed toward the state that is in any way related to determining whether TEG can maintain a custodial relationship with Onaga without RealTrust's consent, or whether TEG can withhold consent from RealTrust's custodial relationship with WFB.  Thus, as to Count I, RealTrust has failed to satisfy the relatedness requirement.

Counts II and V sound in contract.  When a plaintiff's claim "sound[s] in contract, . . . [the court] look[s] to whether 'the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach.' " Adams, 601 F.3d at 6 (quoting Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)) (internal quotation marks omitted).  The contract Mechanics is alleged to have breached is an agreement between a California resident (Mechanics), a Washington resident (RealTrust), and a Nevada (or California) resident (TEG).[4]  Compl., Ex. 3, at 9.  That agreement provides that it is governed by California law.  Id. at 8.

---

[4] In RealTrust's complaint, TEG is described as a Delaware corporation with a principal place of business in Oakland, California.  Compl. ¶ 2.  But, in the copy of the Mechanics custodial agreement appended to the complaint, TEG is shown as having a Nevada address.  Compl., Ex. C, at 9.

12

RealTrust proffers no evidence of any activity by Mechanics in New Hampshire that was instrumental in the formation of the agreement between itself, Mechanics, and TEG.  RealTrust does argue that because WFB had to contact Onaga when WFB took over from Onaga as custodian, Mechanics must have had similar contact with IBT when Mechanics took over from IBT.  That could be, but even assuming that Mechanics contacted IBT during the course of taking over as custodian, any such contact took place <u>after</u> the Mechanics custodial agreement was formed and, in any event, none of RealTrust's claims against Mechanics are based on any contacts Mechanics may have had with IBT during the process of taking custody of RealTrust's clients' assets.

The alleged breach was the failure of a California party to give adequate notice of termination to a Washington party, <u>see</u> Compl. ¶¶ 36, 39, 41, and RealTrust proffers no evidence of any activity by Mechanics in New Hampshire that was instrumental in Mechanics' alleged failure to provide RealTrust with timely notice of its termination of the Mechanics custodial agreement.  Accordingly, as to Counts II and V, RealTrust has failed to satisfy the relatedness requirement.

Finally, as best the court can tell, RealTrust's CPA claim in Count VI is based on unauthorized use of client funds "as set forth above," Compl. ¶ 88, and violations of New Hampshire

banking laws. But, the complaint contains no allegation that Mechanics ever engaged in unauthorized use of client funds, and it identifies no New Hampshire banking laws that Mechanics allegedly violated.[5] Moreover, as with Counts I, II, and V, RealTrust has proffered no evidence of any conduct by Mechanics in New Hampshire that is directly related to its CPA claim. Necessarily, then, as to Count VI, RealTrust has failed to satisfy the relatedness requirement.

In sum, RealTrust has proffered no actual evidence of any contact between Mechanics and New Hampshire, much less any contact that is related, directly or indirectly, to the conduct on which RealTrust bases its claims against Mechanics. Accordingly, it would run counter to the principles of due process for the court to exercise personal jurisdiction over Mechanics. See Phillips, 530 F.3d at 27 (requiring plaintiff to demonstrate relatedness, purposeful availment, and reasonableness before court may assert personal jurisdiction over defendant).

---

[5] RealTrust does not even allege that Mechanics ever engaged in any banking activities in New Hampshire or, for that matter, was ever subject to this state's banking laws. Moreover, it is not at all clear that one could violate the New Hampshire CPA by violating New Hampshire's banking laws. See RSA 358-A:3, I (exempting "[t]rade or commerce that is subject to the jurisdiction of the bank commissioner" from the provisions of the CPA).

Because the court has determined that RealTrust has failed to satisfy the relatedness requirement, there is no need to consider purposeful availment or reasonableness. See Adams, 601 F.3d at 8 (declining to undertake reasonableness analysis when plaintiff failed to proffer sufficient evidence to satisfy purposeful availment requirement) (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001)). With regard to purposeful availment, it is difficult to see how the court could even begin to analyze that requirement in the absence of any contact between Mechanics and New Hampshire. "Purposeful availment rests on the elements of voluntariness and foreseeability." Adams, 601 F.3d at 6 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)). "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself." Adams, 601 F.3d at 6 (quoting Phillips, 530 F.3d at 28) (internal quotation marks omitted, emphasis added). "Foreseeability requires that the contacts with the forum state be of a nature that the defendant could reasonably anticipate being haled into court there." Adams, 601 F.3d at 6 (quoting Adelson, 510 F.3d at 50) (internal quotation marks omitted, emphasis added). For there to be purposeful availment there must be, in the first instance, contact with the forum state.

Here, RealTrust has produced no evidence that Mechanics had any sort of contact with New Hampshire. Thus, there is no contact that could be the subject of a purposeful availment analysis.

## Conclusion

For the reasons given, as well as those developed in Mechanics' memorandum of law, Mechanics' motion to dismiss for lack of personal jurisdiction (doc. no. 22) is granted. Accordingly, Mechanics is dismissed from this case. On that basis, Mechanics' motion to stay (doc. no. 71), is denied as moot.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  March 21, 2011

cc:   John W. Dennehy, Esq.
      Steven J. Dutton, Esq.
      Scott H. Harris, Esq.
      Susan K. Jamison, Esq.
      John Kern, Esq.
      Amanda M. Knudsen, Esq.
      Coleen M. Penacho, Esq.
      Gregory M. Sargent, Esq.
      Andrew W. Serell, Esq.
      Howard A. Slavitt, Esq.