UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

RealTrust IRA Alternatives, LLC
f/k/a Entrust Northwest, LLC

    v.                                   Civil No. 10-cv-382-LM

The Entrust Group, International
Bank & Trust, and Mechanics Bank

## O R D E R

Before the court is plaintiff's Motion for Leave to File its First Amended Verified Complaint ("amended complaint"). All three defendants object, and RealTrust has replied to all three objections. For the reasons given, plaintiff's motion is granted, but the claims asserted in the amended complaint are all dismissed.

## Background

RealTrust IRA Alternatives, LLC ("RealTrust") filed this six-count action on August 31, 2010. Each of the three defendants moved to dismiss on December 3, 2010. On December 14, RealTrust filed an Emergency Petition for Injunction. On December 20, RealTrust objected, on the merits, to each of the three motions to dismiss. Then, on January 21, 2011, RealTrust filed the motion to amend currently before the court. Among

other things, the proposed amended complaint adds claims against The Entrust Group ("TEG") and Mechanics Bank ("Mechanics") for intentional interference with contractual relations, fraud, fraudulent misrepresentation, and indemnification.  In Orders dated March 20, 2011, the court ruled on the three motions to dismiss.  As a result of those Orders, all that remains of this case is the breach of contract claim against IBT asserted in Count II of the original complaint.  In the motion now before the court, RealTrust seeks to replace its original complaint with the amended complaint.

## Discussion

The Federal Rules of Civil Procedure ("Federal Rules") provide, under the circumstances of this case, that RealTrust "may amend [its complaint] only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Each of the three defendants has opposed the motion to amend, so RealTrust may amend its complaint only with leave of the court.

The Federal Rules also provide that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Rule 15(a) reflects a liberal amendment policy . . . ."  United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).  "The Rule allows for liberal amendment in the interests of resolving cases on the merits."  4

James Wm. Moore, <u>Moore's Federal Practice</u> § 15.02[1], at 15-7 (3d
ed. 2010).  Moreover, "the district court enjoys significant
latitude in deciding whether to grant leave to amend."  <u>Gagne</u>,
565 F.3d at 48 (quoting <u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>, 512
F.3d 46, 55 (1st Cir. 2008)).  "Reasons for denying leave [to
amend] include undue delay in filing the motion, bad faith or
dilatory motive, repeated failure to cure deficiencies, undue
prejudice to the opposing party, and futility of amendment."
<u>Gagne</u>, 565 F.3d at 48 (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182
(1962); <u>United States ex rel. Rost v. Pfizer, Inc.</u>, 507 F.3d 720
733-34 (1st Cir. 2007)).

In the spirit of the liberal amendment policy reflected by
Rule 15, in the interest of giving RealTrust a full opportunity
to state its claims, and to the end of reaching the merits, the
court grants RealTrust's motion to amend its complaint.  But, in
this case, honoring the liberal amendment policy reflected in the
Federal Rules is not all that justice requires.  Due in no small
measure to RealTrust's prolific and seemingly self-contradictory
motion practice, defendants have been put to far more trouble and
expense they would have been if RealTrust had prosecuted its
claims in a more orderly and coherent way.  RealTrust has been
the quintessential moving target, objecting to defendants'
motions to dismiss on the merits, then requesting additional

discovery, and then, moving to amend the complaint after the
motions to dismiss were fully briefed, without proffering any
evidence to cure the jurisdictional problems with the original
complaint, problems that were pointed out by defense counsel
months before the motions to dismiss were ever filed.  Beyond
that, the amended complaint contains various factual allegations
that are diametrically opposed to those in the original
complaint, on matters on which RealTrust was fully informed
before it filed the original complaint.  For an action in which
the sole New Hampshire connection is a New Hampshire bank with
which RealTrust has no current relationship, contractual or
otherwise,[1] this case has generated a rather lengthy docket which
includes, among other things, a twice-filed emergency petition
for injunctive relief which, tellingly, sought no relief from the
sole New Hampshire defendant.  And, while the court has not had
to resolve this issue, all three defendants argue, plausibly,
that this entire dispute is subject to arbitration and that, in
fact, several parts of it are currently being arbitrated in
California in a proceeding that got underway before RealTrust
filed suit in New Hampshire.  In short, under the circumstances

---

[1] While not an established fact for purposes of this
litigation, there appears to be no dispute that IBT has, in fact,
surrendered its charter and is no longer a going concern as a New
Hampshire bank.

of this case, justice also requires expeditious – but fair – disposition of the matters before the court.

Accordingly, the court will take the unusual but not unprecedented step of granting RealTrust's motion to amend while, at the same time, treating defendants' objections to the motion to amend as motions to dismiss the amended complaint.  See Glynn v. EDO Corp., 536 F. Supp. 2d 595, 617 (D. Md. 2008) ("I will treat part of defendants' opposition to plaintiff's motion for leave to file a second amended complaint as a motion to dismiss Count IV of plaintiff's third amended complaint").

While unusual, this procedure is logically sound because defendants' arguments against amendment are the same ones they would raise in the motions to dismiss that would surely follow the filing of an amended complaint.  See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (explaining that amendment is futile if amended complaint fails to state a claim).  Moreover, the court has granted RealTrust leave to file replies to each of the three objections to its motion to amend, and those replies advance the same arguments RealTrust would make in opposition to a motion to dismiss.

This court notes that the Court of Appeals for this circuit has consistently held that sua sponte dismissal is "erroneous unless the parties have been afforded notice and an opportunity

to amend the complaint or otherwise respond." <u>Cepero-Rivera v.</u>
<u>Fagundo</u>, 414 F.3d 124, 130 (1st Cir. 2005) (quoting <u>Chute v.</u>
<u>Walker</u>, 281 F.3d 314, 319 (1st Cir. 2002)).  But the court's
disposition of this case, as described below, is far from a
typical <u>sua sponte</u> dismissal.  The relevant issues have been
fully briefed by all parties, albeit as "objections" and
"replies" rather than "motions" and "objections."  Thus, it
cannot be said that the court's procedure will deprive RealTrust
of an opportunity to be heard in opposition to dismissal.  Its
arguments against futility are the very same arguments it would
make in opposition to a motion to dismiss, and the stakes are the
same in either procedural posture: loss of the opportunity to
further litigate the claims at issue.

All RealTrust will lose as a result of the court's
adjustment of this case's procedural posture is the opportunity
to force defendants to engage in yet another round of briefing to
make the very same arguments they have already made in their
objections to RealTrust's motion for leave to amend its
complaint.  Justice hardly requires, and actually counsels
against, the result that would flow from a slavish adherence to
the captions of the documents filed in this case.  Accordingly,
the court will treat defendants' objections to amendment as
motions to dismiss the amended complaint, and will treat

RealTrust's replies to those objections as objections to defendants' motions to dismiss.

With the procedural posture of this case resolved, several bits of housekeeping remain.  First, the amended complaint includes many of the same claims asserted in the original complaint.  The claims against TEG and Mechanics that have been dismissed for lack of personal jurisdiction cannot be revived by the amended complaint; new factual allegations in support of those claims – if any are made in the amended complaint – are not a sufficient cure for RealTrust's failure to produce evidence of contacts with New Hampshire in response to TEG's and Mechanics' previous motions to dismiss.  See Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (point out plaintiff's obligation to proffer evidence when personal jurisdiction is challenged) (citation omitted).  Thus, Counts I (as against TEG and Mechanics), V, VI, VII, VIII, IX, and X are dismissed, for the reasons given in the court's Orders on TEG's and Mechanics' motions to dismiss.

The situation regarding IBT is different.  IBT's previous motion to dismiss was decided under Rule 12(b)(6), and the propriety of using an amended complaint to cure pleading deficiencies is well established.  See DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999).

Accordingly, the single claim asserted against IBT in the amended complaint is not dismissed out of hand for having been dismissed previously.

To restate, the claims of the amended complaint subject to further consideration below are: Count I (against IBT only), Count II (against TEG and Mechanics), Count III (against TEG), Count IV (against TEG and Mechanics), and Count XI (against TEG). Rather than proceeding claim by claim, the court will proceed defendant by defendant.

## A. IBT

Count I of the amended complaint is RealTrust's request for a declaratory judgment.  IBT argues that Count I fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The court agrees.

### 1. The Legal Standard

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini

v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "assume[s] the truth of all well-plead facts and give[s] the plaintiff[s] the benefit of all reasonable inferences therefrom." Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)). However, the court need not credit "bald assertions, . . . unsubstantiated conclusions, . . . outright vituperation or subjective characterizations, optimistic predictions, or problematic suppositions." Fantini, 557 F.3d at 26 (citations and internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).

2. Discussion

        In the memorandum of law supporting its motion for leave to
file an amended complaint, RealTrust represents that its
"proposed amendments also clarify the Declaratory Judgment
action, including clarification that a justiciable controversy
exists involving IBT."  Pl.'s Mem. of Law (doc. no. 58-1), at 5.
In Count I, RealTrust alleges: (1) an agreement between itself,
TEG, and Mechanics and an alleged breach thereof, Am. Compl. ¶¶
102, 103; (2) an agreement between itself and TEG and an alleged
breach thereof, id. ¶¶ 104, 105; (3) "[a]n actual and justiciable
controversy . . . among TEG, Mechanics, and [RealTrust]," id. ¶
106; (4) "[a]n actual and justiciable controversy . . . between
TEG and [RealTrust]," id. ¶ 107; and (5) "[a]n actual and
justiciable controversy . . . between TEG and [RealTrust] with
respect to the rights and obligations under the IBT Custodial
Contract in the event the court makes a finding that the
Mechanics Contract for Custodial Services was repudiated," id. ¶
108.

        IBT points out, correctly, that the only actual and
justiciable controversies mentioned in Count I are one among
itself, TEG, and Mechanics, and two between itself and TEG.
While RealTrust's description of the third controversy mentions
IBT, it does not indicate that IBT is a party to that

controversy.  Thus, IBT argues that Count I fails to state a
claim against it.  RealTrust counters:

> IBT is a necessary party to this action in
> determining the rights and obligations that flow from
> the July 1, 2008 custodial agreement between
> [RealTrust] and IBT (the "IBT Custodial Agreement"), by
> which IBT served as custodian for all of [RealTrust's]
> client accounts.  IBT is a necessary party because it
> is a party to the IBT Custodial Agreement and because
> the Court could find the May 26, 2009 custodial
> agreement between [RealTrust] and the Defendants,
> Mechanics' Bank ("Mechanics") and The Entrust Group,
> Inc. ("TEG") void as a result of fraudulent
> misrepresentation (Count IV of proposed Amended
> Complaint) or that Mechanics and/or TEG repudiated the
> Mechanics Custodial Agreement, thereby making the IBT
> Custodial Agreement operable for determination of
> current ownership of client accounts.

Pl.'s Reply (doc. no. 90), at 4.

The federal Declaratory Judgment Act provides that "[i]n a
case of actual controversy within its jurisdiction . . . any
court of the United States, upon the filing of an appropriate
pleading, may declare the rights and other legal relations of any
interested party seeking such declaration."  28 U.S.C. § 2201(a).
Nowhere does Count I identify either an actual controversy
between RealTrust and IBT or a request by RealTrust for a
declaration of its rights or other legal relations vis à vis IBT.
Accordingly, IBT is entitled to dismissal of Count I, which is
RealTrust's only claim against it, for failure to state a claim
upon which relief can be granted.

B. TEG

RealTrust asserts four claims against TEG: intentional interference with contractual relations (Count II), fraud (Count III), fraudulent misrepresentation (Count IV), and indemnification (Count XI).  TEG argues, among other things, that the court lacks personal jurisdiction over it, that venue is not proper in this judicial district, and that RealTrust has failed to state a claim upon which relief can be granted.  RealTrust disagrees, categorically.  As in the order granting TEG's first motion to dismiss, the court considers both personal jurisdiction and venue.

1. Personal Jurisdiction

"When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Lechoslaw, 618 F.3d at 54 (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)).  When, as here, the court does not conduct a hearing on the issue, it employs "the prima facie method in deciding the jurisdictional question."  Lechoslaw, 618 F.3d at 54 (citation omitted).  "This inquiry asks 'whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal

jurisdiction.' " Id. (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).

"New Hampshire's long-arm statute reaches to the full extent that the Constitution allows." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999) (citing Phelps v. Kingston, 130 N.H. 166, 171 (1987); Computac, Inc. v. Dixie News Co., 124 N.H. 350, 355 (1983)). Thus, the only question here is whether the exercise of personal jurisdiction over TEG would comport with the principles of due process. See Lechoslaw, 618 F.3d at 54. It would not.

"The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants." Id. (quoting Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). As the court of appeals has explained:

> First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

Id. Finally, a "plaintiff must demonstrate that each of these three requirements [i.e., relatedness, purposeful availment, and reasonableness] is satisfied." Phillips, 530 F.3d at 27.

In its Order dismissing the original complaint as to TEG,
the court ruled that RealTrust had proffered no evidence of any
contact between TEG and New Hampshire that was related to the
conduct on which RealTrust based its claims against TEG.[2]
RealTrust's amended complaint makes various new factual
allegations about TEG's contacts with New Hampshire.  But,
RealTrust has proffered no additional evidence of TEG's New
Hampshire contacts (and has not asked for jurisdictional
discovery).  Thus, the question before the court is whether the
evidence RealTrust proffered in support of its objection to TEG's
previous motion to dismiss is sufficient to establish New
Hampshire contacts related to the four newly asserted causes of
action.  It is not.

Count II is RealTrust's claim against TEG and Mechanics for
intentional interference with contractual relations.
Specifically, RealTrust asserts that TEG: (1) "facilitated IBT's
termination of its contract with [RealTrust] upon only 30 days
notice," Compl. ¶ 113; "intentionally caused or induced IBT to
prematurely terminate the IBT Custodial Contract," id. ¶ 115; and
(3) "intentionally caused or induced IBT to terminate its

_____

[2] In its original complaint, RealTrust sought a declaratory
judgment against TEG, and made claims for breach of contract,
quantum meruit/unjust enrichment, misappropriation of trade
secrets, breach of the implied covenant of good faith and fair
dealing, and violation of the New Hampshire Consumer Protection
Act.

contract with [RealTrust] without providing [RealTrust] with the required written notice 180 days prior to termination," id. 116. What, exactly, TEG actually did to induce or facilitate IBT's breach of its custodial agreement is nowhere alleged.

Intentional interference with contractual relations (hereinafter "intentional interference") is a tort.  "The standard for relatedness in a tort claim is typically different from that of a contract claim."  Phillips, 530 F.3d at 27 (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 10 (1st Cir. 2002)).  "When, however, the tort is intentional interference with a contractual or business relationship, the two inquiries begin to resemble each other."  Jet Wine, 298 F.3d at 10 (holding that where relatedness requirement was met for contract claim, it was also met for intentional interference claim).

Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1 (1st Cir. 2009), on which RealTrust relies, demonstrates what relatedness looks like in an intentional interference case. "[T]o prove such a claim, a plaintiff in Rhode Island must establish the following elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom."  Id. at 9 (citations and internal quotation marks

omitted).  In <u>Astro-Med</u>, a California corporation (Nihon Kohden)
hired away a Florida resident (Plant) from a Rhode Island
corporation (Astro-Med), 591 F.3d at 6-7.  Astro-Med sued Nihon
Kohden in the district of Rhode Island, and in holding that
Astro-Med had satisfied the relatedness requirement, the court of
appeals explained:

> Before Nihon Kohden hired Plant, it knew that Astro-Med
> was located in Rhode Island, that Plant had entered
> into the Employee Agreement in Rhode Island, that the
> contract specified it would be governed by Rhode Island
> law, that the contract contained non-competition and
> non-disclosure provisions, and that by virtue of the
> contract, Plant had consented to the exclusive
> jurisdiction of the courts of Rhode Island over any
> disputes related to the contract.  Further, Nihon
> Kohden had sought and obtained legal advice that by
> hiring Plant, it was exposing itself to some legal
> risk.  Thus, Nihon Kohden knew that by employing Plant,
> it was running the risk that Plant would thereby have
> breached his Rhode Island contract with a Rhode Island
> company and any ensuing suit would be initiated in
> Rhode Island and interpreted under Rhode Island law.

<u>Id.</u> at 10.  The court continued:

> Despite this formidable array of Rhode Island
> connections, Nihon Kohden insists that because it is a
> California corporation and because all its direct
> dealings with Plant, a Florida resident, took place
> either in Florida or in California, jurisdiction cannot
> lie in Rhode Island.  Nihon Kohden's argument, however,
> emphasizes too fine a point.  Consistent with <u>Calder v.
> Jones</u>, 465 U.S. 783, 789 (1984), a defendant "need not
> be physically present in the forum state to cause
> injury (and thus 'activity' for jurisdictional
> purposes) in the forum state."  <u>N. Laminate Sales</u> [<u>Inc.
> v. Davis</u>], 403 F.3d [14,] 25 [(1st Cir. 2005)].  Nihon
> Kohden's conduct in Florida and California was a cause
> of the breach of contract-the actual injury-that
> occurred in Rhode Island.  That in-forum injury was

> clearly related to Astro-Med's tortious interference
> claim, satisfying the first prong of the minimum
> contacts analysis.

Id. Astro-Med, it should be noted, had two things this case

lacks: an in-state plaintiff and in-state injury.  Because the

out-of-forum conduct litigated in Astro-Med resulted in in-forum

injury, that case's recognition that out-of-forum conduct can

form the basis for personal jurisdiction does not help RealTrust,

which has not even alleged any in-forum injury.

To prevail on its intentional interference claim, RealTrust

must prove that: "(1) [it] had an economic relationship with a

third party; (2) [TEG] knew of this relationship; (3) [TEG]

intentionally and improperly interfered with this relationship;

and (4) [RealTrust] was damaged by such interference."  Singer

Asset Fin. Co. v. Wyner, 156 N.H. 468, 478 (2007) (quoting Hughes

v. N.H. Div. of Aero., 152 N.H. 30, 40-41 (2005)).

RealTrust has failed to satisfy the relatedness requirement

because it has proffered no evidence of any contact with New

Hampshire by TEG that played a part in IBT's breach of its

custodial agreement with RealTrust.  RealTrust does proffer

evidence of some overlap between the management of TEG and the

management of IBT, but has also proffered evidence that refutes

its allegation, since disavowed, that IBT was TEG's wholly owned

subsidiary.  Thus, the overlapping management of the two

corporate entities is not enough to make IBT TEG's alter ego, or
to make IBT's acts TEG's acts.  In addition, the court has
already ruled that contact with New Hampshire played no part in
the formation of the Mechanics custodial agreement which,
according to RealTrust's theory, was the act that facilitated
TEG's interference with the IBT custodial agreement.  Finally,
RealTrust has not alleged that the breach of the IBT custodial
agreement resulted in injury or damages that occurred in New
Hampshire or were suffered by a New Hampshire resident.  In sum,
RealTrust has failed to satisfy the relatedness requirement as to
Count II.

Count III is RealTrust's claim against TEG for fraud.  While
difficult to parse, that claim appears to be based on
misrepresentations made by TEG to RealTrust concerning the amount
of the cash-management fees TEG was taking from RealTrust and
other similarly situated TEG affiliates.  Am. Compl. ¶¶ 123, 126.

"[I]n a tort case, a court charged with determining the
existence . . . of personal jurisdiction must probe the causal
nexus between the defendant's contacts and the plaintiff's cause
of action."  Phillips Exeter, 196 F.3d at 289 (citing Nowak v.
Tak How Invs., Ltd., 94 F.3d 708, 715-16 (1st Cir. 1996);
Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)).  Count
III asserts a claim for fraud.  "The essence of fraud is a

fraudulent misrepresentation." <u>Brzica v. Trs. of Dartmouth
Coll.</u>, 147 N.H. 443, 449 (2002).  In order to prove fraudulent
misrepresentation, a

> plaintiff must prove that the defendant intentionally
> made material false statements to the plaintiff, which
> the defendant knew to be false or which he had no
> knowledge or belief were true, for the purpose of
> causing, and which does cause, the plaintiff reasonably
> to rely to his detriment.

<u>Walker v. Percy</u>, 142 N.H. 345, 351 (1997) (quoting <u>Caledonia,
Inc. v. Trainor</u>, 123 N.H. 116, 124 (1983).

Here, the complaint does not allege, and the previous
evidentiary submissions do not demonstrate, any New Hampshire
conduct by TEG that had anything to do with the claim stated in
Count III.  The alleged misrepresentation is not alleged to have
been made in New Hampshire, by a New Hampshire resident, or to a
New Hampshire resident.  And, RealTrust does not allege that its
reliance on TEG's statement, or the detriment flowing from its
reliance, took place in New Hampshire or had any other connection
with New Hampshire.  The same holds true for the claim for
fraudulent misrepresentation asserted in Count IV, which is based
upon various representations TEG allegedly made to RealTrust
concerning IBT's inability to continue serving as a custodian and
Mechanics' ability to fill that role.  Accordingly, RealTrust has
failed to satisfy the relatedness requirement with regard to
Counts III and IV.

Finally, in Count XI, RealTrust seeks indemnification from TEG based on language from the 2003 Contract for Services.[3]  As the court has already ruled that no activity by TEG in New Hampshire played any part in the formation of the Contract for Services, this court must, necessarily, determine that RealTrust cannot satisfy the relatedness requirement with respect to a claim in which it asks the court to enforce a part of that agreement.

Based on the foregoing, RealTrust has failed to satisfy the relatedness requirement with regard to any of its four new claims against TEG.  Accordingly, there is no need to address purposeful availment or reasonableness, see Adams, 601 F.3d at 8, and TEG is entitled to dismissal of the amended complaint for lack of personal jurisdiction.

## 2. Venue

Not only does the court lack personal jurisdiction over TEG for the purpose of adjudicating the four new claims advanced in the amended complaint, but, in addition, this judicial district is not the proper venue for resolving those claims.  There is

---

[3] While it is not necessary to delve deeply into Count XI, the claim stated therein appears to be an attempt by RealTrust to collect its own legal fees from TEG by transforming the indemnification provision in Section 9 of the Contract for Services into a fee-shifting provision that directly contradicts Section 15(b), which provides that "[e]ach party to this Agreement shall bear its own legal fees . . . ."  Am. Compl., Ex. 1, at 15.

simply no basis for determining that a substantial part of the events giving rise to RealTrust's claims for intentional interference, fraud, fraudulent misrepresentation, or indemnification occurred in New Hampshire.  The chain of events giving rise to those claims may have involved IBT in some way, but, in the final analysis, those claims are based on no discernable New Hampshire conduct by TEG and allege no injury that touched New Hampshire in any way.

## C. Mechanics

RealTrust asserts claims against Mechanics for intentional interference with contractual relations (Count II) and fraudulent misrepresentation (Count IV).  Mechanics limits its argument to the issue of personal jurisdiction.

In its Order dismissing the original complaint as to Mechanics, the court ruled that RealTrust had proffered no evidence of any contact between Mechanics and New Hampshire, much less any contact that was related, directly or indirectly, that was related to the conduct on which RealTrust based its claims against Mechanics.[4]  Given that RealTrust has proffered no further evidence of any contact between Mechanics and New

---

[4] In its original complaint, RealTrust sought a declaratory judgment against Mechanics and made claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the New Hampshire Consumer Protection Act.

Hampshire, the court necessarily lacks personal jurisdiction over Mechanics for purposes of adjudicating the two new claims asserted against Mechanics in the amended complaint.  Even so, the court turns briefly to the specifics those two claims.

Count II is based on allegations that Mechanics facilitated the breach of the IBT custodial agreement by agreeing with TEG to replace IBT.  RealTrust has proffered no evidence that Mechanics' alleged collusion with TEG involved any New Hampshire contact of any sort.  Similarly, with respect to Count IV, TEG has proffered no evidence of any conduct by Mechanics in New Hampshire, or directed toward New Hampshire, that had anything to do with Mechanics' alleged misrepresentation that it was able to serve as a custodian for RealTrust's client's uninvested assets.

As with TEG, RealTrust has failed to satisfy the relatedness requirement with regard to its claims against Mechanics.  Thus, there is no need to address purposeful availment or reasonableness, see Adams, 601 F.3d at 8, and Mechanics is entitled to dismissal of the amended complaint.

### Conclusion

For the reasons given, RealTrust's motion to amend (doc. no. 58) is granted, but all claims against all three defendants are

dismissed.  Accordingly, the clerk of the court shall enter

judgment in accordance with this order and close the case.

**SO ORDERED.**

_____

Landya B. McCafferty
United States Magistrate Judge

Date:  March 22, 2011

cc:  John W. Dennehy, Esq.
     Steven J. Dutton, Esq.
     Scott H. Harris, Esq.
     Susan K. Jamison, Esq.
     John Kern, Esq.
     Amanda M. Knudsen, Esq.
     Coleen M. Penacho, Esq.
     Gregory M. Sargent, Esq.
     Andrew W. Serell, Esq.
     Howard A. Slavitt, Esq.